**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATRINA L. CALLAWAY, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | No. 1:20-cv-6497 |
| Plaintiff, | ) | |
| v. | ) ) | |
| THE NORTHERN TRUST COMPANY; THE NORTHERN TRUST COMPANY EMPLOYEE BENEFIT ADMINISTRATIVE COMMITTEE; and DOES 1-30, | ) ) ) ) ) ) | |
| Defendants. | | |

**<u>AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiff Katrina L. Callaway, individually and as representative of a class of similarly situated participants and beneficiaries of The Northern Trust Company Thrift-Incentive Plan (the "Plan"), brings this action under 29 U.S.C. §1132(a)(2) and (3) on behalf of the Plan against Defendants The Northern Trust Company and The Northern Trust Company Employee Benefit Administrative Committee and its members ("Defendants") for breach of fiduciary duties and prohibited transactions under the Employee Retirement Income Security Act, 29 U.S.C. §§1001-1461 ("ERISA"). Based on personal knowledge and information obtained from investigation by counsel and discovery in this matter, Plaintiff alleges as follows:

## INTRODUCTION

1.      Defendants are fiduciaries to the Plan with the exclusive authority to select the Plan's investment options.  The Plan's participants, who are current and former Northern Trust employees, can invest their retirement savings in any of the funds that Defendants select for the Plan.

2.      Throughout the Class Period, Defendants breached their fiduciary duties by failing to prudently select the Plan's investment options.  Specifically, Defendants failed to regularly monitor Plan investments and remove ones that become imprudent. Defendants loaded the plan with poorly performing proprietary funds called the Northern Trust Focus Target Retirement Trusts ("Northern Trust Focus Funds" or "the Funds"), and then kept these Funds on the Plan's investment menu throughout the Class Period despite their continued underperformance.

3.      The Northern Trust Focus Funds are "target date funds" designed to achieve certain investment results based on an investor's anticipated retirement date (the "target date").  Target date funds have become increasingly popular retirement savings options.  According to *The Wall Street Journal*, as of the end of 2016, target date funds held 21% of all 401(k) assets in the United

States. As of the end of March 2020, $1.9 trillion of retirement savings were invested in target-date funds.[1] Given their popularity, retirement plan fiduciaries have hundreds of different target date funds to choose from when selecting target date options for their plans.

4.       Despite a market flush with better-performing alternatives, Defendants selected the Northern Trust Focus Funds to be the Plan's target date asset class investment option. Selecting its own funds presents a significant conflict of interest. This is especially true because the Funds' recordkeeping expenses are paid from the management fees charged by the Funds, which in turn are based on the total assets under management. Because the Northern Trust receives more money for placing more of its employees' assets in these Funds, Northern Trust has a conflict of interest. In 2019, Northern Trust received $2 million in these fees.

5.       In addition to being disloyal, Northern Trust has been imprudent in selecting its own target-date funds because they drastically underperform peer target-date funds. The Northern Trust Focus Funds have significantly underperformed their benchmark indices and comparable target date funds since Northern Trust launched them in 2010. For nearly a decade, the Northern Trust Focus Funds have performed worse than 70% to 90% of peer funds.

6.       Furthermore, Defendants refused to diversify by choosing non-proprietary target-date funds; as the DOL suggests, "Nonproprietary TDFs could also offer advantages by including component funds that are managed by fund managers other than the TDF provider itself, thus diversifying participants' exposure to one investment provider."[2] Even aside from the egregiously

---

[1] Morningstar Manager Research, "2020 Target-Date Strategy Landscape" (May 2020), available at https://www.morningstar.com/content/dam/marketing/shared/pdfs/Research/TDF_Landscape_2020_0508 20_Final.pdf?utm_source=eloqua&utm_medium=email&utm_campaign=&utm_content=22501.
[2] U.S. Dept. of Labor, "Target Date Retirement Funds - Tips for ERISA Plan Fiduciaries" (Feb. 2013), available at https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds.pdf.

poor performance of the Northern Trust Focus Funds, Northern Trust cannot be the best manager year after year for all target date funds. Thus, its failure to diversify is imprudent.

7.      Still, Defendants refuse to remove the Northern Trust Focus Funds from the Plan's menu of retirement investment options. Defendants have even selected the Northern Trust Focus Funds as the Plan's default investment options, an investment feature in which the Plan automatically invests participants' retirement savings in a Northern Trust Focus Fund if they do not select another investment.

8.      Defendants' disloyal and imprudent decision to keep offering the Northern Trust Focus Funds in the Plan has had a large and tangible impact on Plan participants' retirement accounts. Based on an analysis of data compiled by Morningstar, Inc., Plaintiff projects the Plan lost upwards of $34 million in retirement savings since 2014 because of Defendants' decision to retain the Northern Trust Focus Funds in the Plan instead of removing them.

9.      To remedy Defendants' breach of fiduciary duties and prohibited transactions, Plaintiff individually, and as representative of a class of participants and beneficiaries of the Plan, brings this action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) to enforce Defendants' personal liability under 29 U.S.C. §1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty and prohibited transaction occurring from November 2, 2014 through December 31, 2019 (the "Class Period").[3] In addition, Plaintiff seeks such other equitable or remedial relief for the Plan as the Court may deem appropriate.

10.     Plaintiff did not have knowledge of all material facts (including, among other things, comparisons of the Plan's investment performance relative to other available investment alternatives) necessary to understand that Defendants breached their fiduciary duties and engaged

---

[3]      Damage calculations provided in this Complaint generally begin on January 1, 2014 for estimation purposes. Particular losses within the Class Period will be provided through expert discovery.

in other unlawful conduct in violation of ERISA until shortly before filing this Amended Complaint. Further, Plaintiff does not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan, including Defendants' processes for monitoring and removing Plan investments, because this information is solely within the possession of Defendants prior to discovery. For purposes of this Amended Complaint, Plaintiff has drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

## **PARTIES**

11. Katrina L. Callaway was a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan from 2016 until the spring of 2020. Plaintiff Callaway suffered harm by investing in the Plan's poorly performing investment options, including the Northern Trust Focus 2030 Fund during the Class Period.

12. Defendant The Northern Trust Company ("Northern" or "Northern Trust") is an Illinois banking corporation with its principal place of business located in Chicago, Illinois. Northern is the sponsor of the Plan within the meaning of ERISA Section 3(16)(B), 29 U.S.C. §1002(16)(B), and fiduciary of the Plan. Among other things, Northern is responsible for the general administration and management of the Plan and for communicating with the Plan's participants.

13. Defendant The Northern Trust Company Employee Benefit Administrative Committee (the "Benefit Committee") is the named Plan Administrator and named Plan Fiduciary, and is located at 50 South LaSalle Street, Chicago, Illinois 60603.

14. Because Plaintiff is currently unaware of the identities of the individual members of the Benefit Committee, those individuals are collectively named as Defendants Does 1-30.

Plaintiff will substitute the real names of the Does when they become known to Plaintiff. To the extent the Benefit Committee delegated any of its fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiff, the person or entity to which the function was delegated is also a fiduciary under 29 U.S.C. §1002(21)(A), and also alleged to be a Doe Defendant.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this matter pursuant to ERISA § 502(e)(2), 29 U.S.C. §1132(a)(2) and (3), 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

16.     This Court has general personal jurisdiction over Defendant Northern, which has its principal place of business in this District, and over any other defendants that reside in this District. This Court has specific personal jurisdiction over all Defendants because they took the actions described herein in this District through the management of the Plan.

17.     Venue is proper in this District under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because Defendants reside in this District, Defendants conduct business in this District, and the harm complained of herein emanated from this District.

## ERISA'S FIDUCIARY STANDARDS

18.     ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

19. These fiduciary duties under ERISA §§ 404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence.

20. "[T]he duties charged to an ERISA fiduciary are 'the highest known to the law.'" *George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 852 (N.D. Ill. 2011). ERISA fiduciaries must "act in good faith as an objectively prudent fiduciary would act, not simply as a prudent layperson would act." *Chesemore v. All. Holdings, Inc.*, 886 F. Supp. 2d 1007, 1041 (W.D. Wis. 2012), *aff'd* 829 F.3d 803 (7th Cir. 2016).

21. Fiduciaries also have a duty to establish a process for periodic review of selected TDFs. Plan fiduciaries are required to periodically review the plan's investment options to ensure that they should continue to be offered.[4] With respect to target date funds, the DOL requires plan fiduciaries to offer a broad range of investment alternatives with diversified risk-return characteristics.

22. As part of their fiduciary duties here, Defendants have "a continuing duty to monitor [Plan] investments and remove imprudent ones" that exists "separate and apart from the duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 575 U.S. 523, 523 (2015). "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* If an investment is imprudent, Defendants "'must dispose of it within a reasonable time.'" *Id.* (citation omitted). Accordingly, fiduciaries must vigorously and independently investigate each of the Plan's investment options with the skill of a prudent investor.

---

[4] U.S. Dept. of Labor, "Target Date Retirement Funds - Tips for ERISA Plan Fiduciaries" (Feb. 2013), available at https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds.pdf.

23.     ERISA fiduciaries owe a duty of loyalty to fund participants because the fiduciaries are required to "discharge [their] duties with respect to the plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan[.]" ERISA § 404(a)(1)(A).

24.     In addition to the general duty of loyalty, ERISA fiduciaries also are barred from engaging in conflicted transactions or those with parties in interest.  ERISA §406. "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if [it] knows or should know that such transaction constitutes a direct or indirect . . . sale or exchange, or leasing, of any property[,]. . . furnishing of . . . services . . . between the plan and a party interest" or "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]"  ERISA §406(a)(1). A "party in interest" can include "any fiduciary[,]. . . a person providing services to such plan[, or] an employer any of whose employees are covered by such plan[.]"  ERISA §402(14).  "A fiduciary with respect to a plan shall not . . . deal with the assets of the plan in [its] own interest or for [its] own account" or "receive any consideration for [its] own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."  ERISA §406(b).

25.     Payment of excessive recordkeeping fees to a party in interest can constitute a prohibited transaction under Section 406.  *See Vellali v. Yale University*, 308 F.Supp.3d 673, 689-91 (D. Conn. 2018).   In addition, failure to monitor investments to ensure that recordkeeping fees remain reasonable can constitute violations of the duties of prudence and of monitoring.  *See Ramos v. Banner Health*, 461 F.Supp.3d 1067, 1106-7 (D. Colo. 2020).

26.     ERISA § 405 renders Plan fiduciaries liable for the breaches of other fiduciaries under certain circumstances, such as when a fiduciary knowingly participates in or conceals the

breach of another fiduciary, if the fiduciary's own breach enables the breach by the other fiduciary, or if the fiduciary is aware of the other fiduciary's breach yet makes no reasonable effort to correct the breach.

## FACTUAL ALLEGATIONS

### I. THE PLAN

27.     The Plan is a profit-sharing plan that includes a "qualified cash or deferred arrangement" as described in Section 401(k) of the Internal Revenue Code, I.R.C. §401(k) (1986) (hereinafter denoted as "the Code") and is subject to the provisions of ERISA. The Plan is established and maintained under a written document in accordance with 29 U.S.C. §1102(a). Defendant The Northern Trust Company is the sponsor of the Plan, and Defendant the Benefit Committee is the Plan Administrator.

28.     The Plan provides for retirement income for tens of thousands of Northern Trust employees, former employees, and their beneficiaries (the Plan "participants"). A participant's retirement account balance primarily depends on contributions made on behalf of each employee by his or her employer, Northern Trust's matching contributions, and the performance of investment options net of fees and expenses. Accordingly, poor investment performance can significantly impair the value of a participant's account. Over time, even seemingly small differences in performance can result in significant difference in the amount of savings available at retirement. Defendants exclusively control the selection and retention of the Plan's investment options.

29.     The Plan has over $2 billion in assets under management, with more than $350 million of those assets invested among 11 Northern Trust Focus Funds.

30.     With over $2 billion in assets, the Plan has tremendous leverage to demand and receive superior investment products and services.  Unfortunately, Defendants did not effectively use that leverage to identify and select prudent target date options for Plan participants.

## II.   NORTHERN TRUST'S BREACH OF FIDUCIARY DUTIES AND PROHIBITED TRANSACTIONS

### A.   Defendants Violated Their Fiduciary Duties by Choosing and Failing to Remove Underperforming Target Funds

31.     As Plan fiduciaries, Defendants were responsible for selecting and then monitoring the Plan's investment options.  Defendants failed to prudently perform this function.  Out of the 29 investment options Defendants offered Plan participants, 19 of them underperformed their peers.

32.     In the most egregious breaches, Defendants selected a suite of proprietary target date funds – the Focus Funds – that were chronic poor performers.  Defendants failed to remove the Funds from the Plan despite their abysmal underperformance for almost a decade.

33.     Defendants began offering the Northern Trust Focus Funds[5] to Plan participants in 2013.  The Funds have target retirement dates ranging from 2010 to 2060.  The Northern Trust Focus Funds are the only target date retirement investing options in the Plan.  Participants in the Plan who want to invest in a target date strategy have no choices other than the Northern Trust Focus Funds.

---

[5]     These funds are organized as a collective investment trust (as opposed to a registered investment company or mutual fund).  Collective investment trusts are subject to either state or federal banking regulations but are exempt from regulation by the Securities and Exchange Commission and the securities regulations of any state or other jurisdiction.  Accordingly, public information is not as readily available for collective investment trusts as it would be for mutual funds.  For information to support the allegations in the Complaint, Plaintiff has relied primarily on Department of Labor filings and data published by Morningstar.

34.     Defendants also selected the Northern Trust Focus Funds as the Plan's default investment options.  That is, if participants do not make investment fund elections, the Plan automatically invests their contributions, along with any matching contributions and/or earnings, in one of the Northern Trust Focus Funds based on their age.

35.     As of December 31, 2019, the Plan identified the following Northern Trust Focus Funds along with the amount of Plan assets invested in each fund:[6]

| Plan Option | 2019 Value | 2014 Value |
|---|---|---|
| Northern Trust Focus 2010 Fund | $ 3,677,201 | $ 4,927,741 |
| Northern Trust Focus 2015 Fund | $ 7,890,871 | $ 21,709,391 |
| Northern Trust Focus 2020 Fund | $ 33,979,328 | $ 27,221,361 |
| Northern Trust Focus 2025 Fund | $ 53,505,574 | $ 33,023,986 |
| Northern Trust Focus 2030 Fund | $ 75,561,796 | $ 25,037,811 |
| Northern Trust Focus 2035 Fund | $ 60,637,001 | $ 28,341,287 |
| Northern Trust Focus 2040 Fund | $ 46,656,990 | $ 18,795,976 |
| Northern Trust Focus 2045 Fund | $ 42,006,076 | $ 13,550,154 |
| Northern Trust Focus 2050 Fund | $ 32,805,571 | $ 7,762,024 |
| Northern Trust Focus 2055 Fund | $ 17,861,027 | $ 2,909,610 |

36.     Retirement plan fiduciaries typically offer target date investing options through a suite of funds bundled by a single investment adviser (here, Northern Trust).  Since Defendants offer the Funds to the Plan as a suite, they use the same selection and monitoring process for each of the Northern Trust Focus Funds.

---

[6]     To capture the full damages from the start of the class period 2014, the values listed here are the reported assets as of the end of December 31, 2013, as disclosed in Form 11 filed with the U.S. Securities and Exchange Commission on June 6, 2014.  The 2014 values are used in later sections to illustrate the economic losses to plan participants.  However, these values do not account for fresh inflows into the funds from new employees, which likely occurred because the majority of the Northern Trust Focus Funds have multiples of more assets in 2019 compared to 2014.  Thus, the real damages for members of the Class, when including new employees who joined these plans after 2014, are likely far higher.  Plaintiff has also not calculated damages for the Northern Trust Focus 2060 Fund, which was added to the Plan only two years ago, and where information on returns is not yet available.  But because of the poor performance of all the Northern Trust Focus Funds, the inclusion of the Northern Trust Focus 2060 Fund almost certainly has resulted in additional damages.

37.     Defendants' selection and monitoring process for the Northern Trust Focus Funds has been deficient.  Before deciding to present the Northern Trust Focus Funds to the Plan's participants in 2013, any prudent ERISA fiduciary adhering to a rigorous investment selection process would have compared the Funds' performance with the performance of established target date benchmarks.  By 2013, when Defendants first put the Northern Trust Focus Funds in the Plan, the Funds had a track record of poor performance compared to these indexes.  In fact, since Northern Trust created the Funds in 2010, they have underperformed relative to both benchmarks.

38.     The Northern Trust Focus Funds also had a record of underperformance relative to comparable target date funds.  To measure each fund's investment performance relative to its peers, Morningstar places each of the Northern Trust Focus Funds into a specific target date Morningstar Category[7] that includes hundreds of other funds pursuing the same target retirement date investment strategy.  Morningstar classifies the target date funds offered by American Funds, T. Rowe Price and Vanguard (collectively, the "Comparator Funds") within the same Category as the Northern Trust Focus Funds.  Each investment adviser for the Comparators Funds is an industry leader capable of providing target date strategies to large 401(k) plans like the Plan here. Each of the Comparator Funds outperformed the Northern Trust Focus Funds between 2010 and 2013.  Still, Defendants selected Northern Trust Focus Funds for the Plan instead of the Comparator Funds.

39.     Defendants' decision to select the Northern Trust Focus Funds as the Plan's target date strategy investment options resulted, collectively speaking, in a swift and devastating blow to Plaintiff's and other Plan participants' retirement accounts.  In 2013-2014, the first two years that

---

[7]      A Morningstar Category is assigned by placing funds (*e.g.*, Northern Trust, Fidelity, T. Rowe Price, and Vanguard) into peer groups based on their underlying holdings.  The underlying securities in each portfolio are the primary factor in Morningstar's analysis and proprietary classification methodology. Funds are placed in a category based on their portfolio statistics and compositions over the past three years.

the Plan offered the Northern Trust Focus Funds, those Funds underperformed relative to the Comparator Funds. Predictably, Northern Trust Focus Funds continued underperforming throughout the class period. Since their inception in 2010, the Northern Trust Focus Funds have experienced nearly a decade of continuous underperformance.

40. Still, Defendants have failed to remove the Northern Trust Focus Funds from the Plan. During the proposed Class Period here, Defendants even added the Northern Trust 2060 Fund to the Plan's mix. A reasonable investigation by Defendants would have revealed the Focus Funds' chronic underperformance and prompted Defendants to remove and replace them with superior options.

| Investment Name Benchmark(s) | Average Annual Total Return as of 12/31/2019 | | | |
|---|---|---|---|---|
| | 1 Year | 5 Year | 10 Year (if less, since Inception*) | Inception Date |
| Northern Trust International Equity Index | 21.78% | 5.88% | 4.17%* | 10/24/2013 |
| MSCI World ex USA IMI | 23.56% | 6.31% | 4.60%* | |
| Northern Trust Large Cap Equity Index Fund | 31.49% | 11.68% | 13.55% | 02/28/1995 |
| S&P 500 | 31.49% | 11.70% | 13.56% | |
| Northern Trust Mid Cap Equity Index | 26.20% | 9.00% | 12.98%* | 02/01/2010 |
| S&P MidCap 400 | 26.20% | 9.03% | 13.03%* | |
| Northern Trust Small Cap Equity Index | 25.52% | 8.21% | 12.18%* | 02/01/2010 |
| Russell 2000 | 25.52% | 8.23% | 12.22%* | |
| Jennison Small Cap Equity Fund | 26.40% | 7.32% | 12.06%* | 08/02/2010 |
| Russell 2000 Growth | 28.48% | 9.34% | 13.17%* | |
| Northern Trust Bond Index | 8.69% | 3.00% | 3.59%* | 02/01/2010 |
| BBgBarc U.S. Agg Bond | 8.72% | 3.05% | 3.64%* | |
| T Rowe Price US Structured Research Equity Trust | 32.78% | 10.14% | 12.72%* | 08/02/2010 |
| Russell 1000 Growth | 36.39% | 14.63% | 16.11%* | |
| DFA Emerging Markets Core Equity Portfolio | N/A | N/A | 10.82%* | 06/03/2019 |
| MSCI Emerging Markets (N) | N/A | N/A | 12.58%* | |
| Wells Fargo Advantage Core Bond Fund | 8.50% | 2.98% | 3.27%* | 10/24/2013 |
| BBgBarc U.S. Agg Bond | 8.72% | 3.05% | 3.26%* | |

41.     To this day, the investment performance of each of the ten Northern Trust Focus Funds has continued its downward spiral to the bottom of their respective Morningstar Category for the preceding three-year and five-year periods. Most of the Northern Trust Focus Funds have performed worse than between 70% and 95% of the hundreds of funds within their respective Morningstar Categories for the past three-year and five-year periods. The Northern Trust Focus Funds have also continued underperforming the Dow Jones US Target Date (DJ US TD) Index and S&P Target Date (S&P TD) Index. The overall breadth and depth of the Northern Trust Focus Funds' underperformance raises a plausible inference that Defendants' fund selection and monitoring process for the Plan was tainted by self-interest, a lack of competence, and a failure of effort. Northern Trust's own employee handbook from 2014 states, "Effective Friday, January 29, 2016, the annual expense ratio for the Northern Trust Focus Funds will be reduced to 0.09% from 0.12%." From the beginning of the class period to January 28, 2016, the fund charged 12 bps and from January 29, 2016 to the end of the class period, the fund charges 9 bps, which means during the class period Northern Trust has made almost $2 million from their employees' retirement savings.

42.     In the tables below, Plaintiff demonstrates the underperformance of the 10 Northern Trust Focus Funds compared to the S&P TD Index, the DJ US TD Indices, and the Comparator Funds at various periods since 2010. The data presented below was available to Defendants throughout the proposed Class Period in real-time.

43.     The Comparator Funds listed in the tables below (T. Rowe Price and Vanguard) pursue the same investment objectives as the Northern Trust Focus Funds, are managed by well-known investment advisers, and are available to all large retirement plans. Defendants would not have had to scour the market to find them.

13

44.     By selecting the Northern Trust Focus Funds and then failing to remove them from the Plan, Defendants breached their fiduciary duty of prudence under ERISA.  Defendants' decisions have had a profound and lasting effect on the Plan.  Because of Defendants' selection of their own Focus Funds as the target date funds for the Plan, Plaintiff and other Plan participants have together lost upwards of $34 million in retirement savings since 2014.

i.     **Northern Trust Focus 2010 Fund**

45.     The Northern Trust (NT) Focus 2010 Fund's underperformance dates to its inception.  **Table 1.a** below, illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 1.a**

<u>2010-2013</u>

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2010 | 34.99% | 7.96% |
| Vanguard 2010 | 40.03% | 8.98% |
| T Rowe Price 2010 | 45.25% | 10.00% |
| American Funds 2010 | 43.30% | 9.62% |
| S&P 2010 TD BM | 37.22% | 8.41% |
| DJ US 2010 TD BM | 33.93% | 7.74% |

46.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 1.a** above as benchmarks for the performance of the Northern Trust Focus 2010 Fund. Morningstar also places the Northern Trust Focus 2010 Fund in its Target Date 2000-2010 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price and Vanguard.[8]

---

[8]     Although Vanguard offered the Vanguard Target Retirement 2010 Trust as a collective investment trust to 401(k) plans, Vanguard discontinued its target date 2010 strategy in 2017, as its asset allocation became substantially identical to the Target Retirement Income Fund.  Plaintiff could not access Morningstar archived performance data for the Vanguard Target Retirement 2010 Trust.

47.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2010 Fund from the Plan.  Predictably, the underperformance continued throughout the Class Period from November 2, 2014 through December 31, 2019.

48.     **Table 1.b** below illustrates the underperformance of the Northern Trust Focus 2010 Fund from 2014 through the first half of 2020 on an annualized basis.  Furthermore, the differences in annual performance are even more pronounced when compounded over time.  Thus, as the table demonstrates, the Northern Trust Focus 2010 Fund also significantly underperformed the benchmark indexes and Comparator Funds[9] on a cumulative basis.

**Table 1.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|---|---|---|---|---|---|---|---|---|---|
| NT Focus 2010 | 4.96% | -0.49% | 5.26% | 9.24% | -3.01% | 14.36% | 0.99% | 34.53% | |
| Vanguard 2010 | 5.94% | -0.21% | 5.21% | 8.48% | -1.99% | 13.15% | 1.47% | 35.77% | -1.24% |
| T Rowe Price 2010 | 4.99% | -0.77% | 7.11% | 11.67% | -3.61% | 16.14% | -0.66% | 38.58% | -4.05% |
| American Funds 2010 | 6.79% | -0.84% | 7.44% | 10.33% | -2.52% | 13.91% | -0.09% | 39.26% | -4.74% |
| S&P 2010 TD BM | 5.06% | -0.20% | 5.82% | 9.96% | -3.10% | 14.30% | 0.48% | 35.79% | -1.26% |
| DJ US 2010 TD BM | 6.92% | 0.36% | 4.05% | 5.75% | -0.63% | 11.05% | 2.55% | 33.62% | 0.91% |

49.     Put in a broader context, according to Morningstar, the 2010 Fund's performance has been worse than 81% of funds in Target Date 2010 Morningstar Category for the past three-year and five-year periods.  In those periods, there have been between 88 and 108 funds in that Morningstar Category.

50.     At the beginning of the Class Period in 2014, the assets of the Northern Trust Focus 2010 Fund totaled approximately $4.9 million.  **Table 1.c** below shows the hypothetical growth of $4.9 million invested in the Northern Trust Focus 2010 Fund and each of the Comparator Funds from January 1, 2014 through June 30, 2020.  As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2010 Fund with one of these Comparator Funds in 2014 resulted in the Plan losing upwards of $233,000 in retirement savings.

---

[9]     Data unavailable.  *See supra* note 8.

**Table 1.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $ 4,927,741.00 |
|---|---|---|---|---|
| Northern Trust Focus 2010 Fund W | 34.53% | 4.67% | $ | 6,629,220.44 |
| | | | | |
| Vanguard Target Retirement 2010 | 35.77% | 4.82% | $ | 6,690,154.86 |
| +/- Northern Trust | -1.24% | -0.15% | $ | (60,934.42) |
| | | | | |
| T. Rowe Price Target 2010 | 38.58% | 5.15% | $ | 6,828,859.41 |
| +/- Northern Trust | -4.05% | -0.48% | $ | (199,638.97) |
| | | | | |
| American Fund 2010 | 39.26% | 5.23% | $ | 6,862,549.12 |
| +/- Northern Trust | -4.74% | -0.56% | $ | (233,328.69) |

ii.      **Northern Trust Focus 2015 Fund:**

51.      The Northern Trust Focus 2015 Fund's underperformance dates to its inception.

**Table 2.a** below, illustrates nearly four years of underperformance leading up to the Class Period,

relative to benchmark indexes and Comparator Funds.

**Table 2.a**

2010-2013

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2015 | 38.54% | 8.68% |
| Vanguard 2015 | 46.41% | 10.22% |
| T Rowe Price 2015 | 52.25% | 11.33% |
| American Funds 2015 | 48.12% | 10.55% |
| S&P 2015 TD BM | 43.29% | 9.62% |
| DJ US 2015 TD BM | 40.87% | 9.14% |

52.      A prudent fiduciary would have used the indexes and Comparator Funds listed in

**Table 2.a** above as benchmarks for the performance of the Northern Trust Focus 2015 Fund.

Morningstar also places the Northern Trust Focus 2015 Fund in its Target Date 2015 Morningstar

Category along with the Comparator Funds managed by American Funds, T. Rowe Price and

Vanguard.

16

53.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2015 Fund from the Plan.  Predictably, the underperformance continued throughout the Class Period.

54.     **Table 2.b** below illustrates the underperformance of the Northern Trust Focus 2015 Fund from January 1, 2014 through June 30, 2019 on an annualized basis.  Furthermore, the differences in annual performance are even pronounced when compounded over time.  Thus, as the table demonstrates, the Northern Trust Focus 2015 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 2.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performance |
|---|---|---|---|---|---|---|---|---|---|
| NT Focus 2015 | 4.69% | -0.87% | 5.46% | 9.74% | -3.21% | 14.58% | 0.99% | 34.52% | |
| Vanguard 2015 | 6.57% | -0.46% | 6.17% | 11.51% | -2.98% | 14.80% | 0.78% | 40.96% | -6.44% |
| T Rowe Price 2015 | 5.38% | -0.57% | 7.33% | 13.33% | -4.17% | 17.40% | -1.11% | 41.81% | -7.29% |
| American Funds 2015 | 6.63% | -0.61% | 7.55% | 11.26% | -2.71% | 14.83% | -0.43% | 41.07% | -6.55% |
| S&P 2015 TD BM | 5.50% | -0.17% | 6.55% | 11.40% | -3.66% | 15.39% | -0.29% | 38.56% | -4.04% |
| DJ US 2015 TD BM | 7.41% | 0.28% | 5.19% | 6.87% | -1.12% | 12.10% | 2.02% | 36.94% | -2.43% |

55.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2015 Fund performed worse than 87% and 77% of all funds in the Target Date 2015 Morningstar Category for the preceding three-year and five-year periods, respectively.  In those periods, there have been between 79 and 109 funds in the Target Date 2015 Morningstar Category.

56.     At the beginning of the Class Period in 2014, the assets of the Plan that were invested in the Northern Trust Focus 2015 Fund totaled approximately $21.7 million.  **Table 2.c** below shows the hypothetical growth of $21.7 million invested in the Northern Trust Focus 2015 Fund and each of the Comparator Funds from January 1, 2014 through June 30, 2020.  As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2015 Fund with one of these

Comparator Funds in 2014 resulted in the Plan losing upwards of $1.4 million in retirement savings.

**Table 2.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $ 21,709,391.00 |
|---|---|---|---|---|
| Northern Trust Focus 2015 Fund W | 34.52% | 4.67% | $ | 29,202,883.34 |
| | | | | |
| Vanguard Target Retirement 2015 | 40.96% | 5.42% | $ | 30,600,942.00 |
| +/- Northern Trust | -6.44% | -0.76% | $ | (1,398,058.67) |
| | | | | |
| T. Rowe Price Target 2015 | 41.81% | 5.52% | $ | 30,786,124.43 |
| +/- Northern Trust | -7.29% | -0.85% | $ | (1,583,241.09) |
| | | | | |
| American Fund 2015 | 41.07% | 5.44% | $ | 30,624,677.51 |
| +/- Northern Trust | -6.55% | -0.77% | $ | (1,421,794.17) |

      iii.     **Northern Trust Focus 2020 Fund:**

57.    The Northern Trust Focus 2020 Fund's underperformance dates to its inception. **Table 3.a** below, illustrates nearly four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 3.a**
<u>2010-2013</u>

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2020 | 42.28% | 9.42% |
| Vanguard 2020 | 51.28% | 11.15% |
| T Rowe Price 2020 | 58.26% | 12.44% |
| American Funds 2020 | 54.42% | 11.73% |
| S&P 2020 TD BM | 48.94% | 10.71% |
| DJ US 2020 TD BM | 49.78% | 10.87% |

58.    A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 3.a** above as benchmarks for the performance of the Northern Trust Focus 2020 Fund. Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2020 as the benchmark index for the Northern Trust Focus 2020) Fund.  Morningstar also places the

18

Northern Trust Focus 2020 Fund in its Target Date 2020 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price and Vanguard.

59.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2020 Fund from the Plan.  Predictably, the Fund continued underperforming throughout the Class Period.

60.     **Table 3.b** below illustrates the underperformance of the Northern Trust Focus 2020 Fund from January 1, 2014 through June 30, 2020 on an annualized basis.  Furthermore, the differences in annual performance are even more pronounced when compounded over time.  Thus, as the table demonstrates, the Northern Trust Focus 2020 Fund significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 3.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performance |
|---|---|---|---|---|---|---|---|---|---|
| NT Focus 2020 | 4.46% | -1.27% | 5.76% | 10.71% | -3.64% | 15.05% | 0.99% | 35.20% | |
| Vanguard 2020 | 7.10% | -0.68% | 6.94% | 14.08% | -4.24% | 17.63% | -0.59% | 45.33% | -10.13% |
| T Rowe Price 2020 | 5.63% | -0.31% | 7.40% | 15.74% | -4.93% | 19.38% | -1.77% | 45.93% | -10.73% |
| American Funds 2020 | 6.73% | 0.17% | 7.06% | 12.82% | -2.69% | 15.62% | 0.07% | 45.39% | -10.20% |
| S&P 2020 TD BM | 5.69% | -0.21% | 7.20% | 12.77% | -4.16% | 16.51% | -1.02% | 40.91% | -5.72% |
| DJ US 2020 TD BM | 7.99% | 0.27% | 6.29% | 8.46% | -1.43% | 13.87% | 1.07% | 41.61% | -6.42% |

61.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2020 Fund performed worse than 82% and 81% of all funds in the Target Date 2020 Morningstar Category over the preceding three-year and five-year periods, respectively.  In those periods, there have been between 163 and 204 funds in the Target Date 2020 Morningstar Category.

62.     At the beginning of the Class Period in 2014, the assets of the Northern Trust Focus 2020 Fund totaled approximately $27.2 million.  **Table 3.c** below shows the hypothetical growth of $27.2 million invested in the Northern Trust Focus 2020 Fund and each of the Comparator Funds from January 1, 2014 through June 30, 2020.  As the table makes clear, Defendants' failure

to replace the Northern Trust Focus 2020 Fund with one of these Comparator Funds in 2014 resulted in the Plan losing upwards of $2.7 million in retirement savings.

**Table 3.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $ 27,221,361.00 |
|---|---|---|---|---|
| Northern Trust Focus 2020 Fund W | 35.20% | 4.75% | $ | 36,802,501.15 |
| | | | | |
| Vanguard Target Retirement 2020 | 45.33% | 5.92% | $ | 39,560,777.80 |
| +/- Northern Trust | -10.13% | -1.17% | $ | (2,758,276.66) |
| | | | | |
| T. Rowe Price Target 2020 | 45.93% | 5.99% | $ | 39,723,432.13 |
| +/- Northern Trust | -10.73% | -1.24% | $ | (2,920,930.98) |
| | | | | |
| American Fund 2020 | 45.39% | 5.93% | $ | 39,577,764.41 |
| +/- Northern Trust | -10.20% | -1.18% | $ | (2,775,263.26) |

iv. **Northern Trust Focus 2025 Fund:**

63.    The Northern Trust Focus 2025 Fund's underperformance dates to its inception. **Table 4.a** below illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 4.a**

<u>2010-2013</u>

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2025 | 45.88% | 10.12% |
| Vanguard 2025 | 55.65% | 11.96% |
| T Rowe Price 2025 | 63.35% | 13.35% |
| American Funds 2025 | 64.71% | 13.59% |
| S&P 2025 TD BM | 53.69% | 11.60% |
| DJ US 2025 TD BM | 59.62% | 12.68% |

64.    A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 4.a** above as benchmarks for the performance of the Northern Trust Focus 2025 Fund. Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2025 as

20

the benchmark index for the Northern Trust Focus 2025 Fund. Morningstar also places the Northern Trust Focus 2025 Fund in its Target Date 2025 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price and Vanguard.

65. Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2025 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

66. **Table 4.b** below illustrates the underperformance of the Northern Trust Focus 2025 Fund from January 1, 2014 through June 30, 2020 on an annualized basis. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2025 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 4.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performance |
|---|---|---|---|---|---|---|---|---|---|
| NT Focus 2025 | 4.18% | -1.66% | 6.31% | 12.42% | -4.35% | 16.85% | -0.03% | 36.81% | |
| Vanguard 2025 | 7.17% | -0.85% | 7.49% | 15.95% | -5.16% | 19.64% | -1.46% | 48.07% | -11.26% |
| T Rowe Price 2025 | 5.86% | -0.16% | 7.53% | 17.67% | -5.60% | 20.94% | -2.24% | 49.25% | -12.44% |
| American Funds 2025 | 6.66% | 0.13% | 7.36% | 15.27% | -3.41% | 17.75% | 0.58% | 51.18% | -14.37% |
| S&P 2025 TD BM | 5.57% | -0.23% | 7.81% | 14.56% | -5.03% | 18.40% | -2.26% | 42.97% | -6.16% |
| DJ US 2025 TD BM | 8.70% | 0.18% | 7.77% | 10.56% | -2.30% | 16.37% | -0.15% | 47.29% | -10.48% |

67. Put in a broader context, according to Morningstar, Northern Trust Focus 2025 Fund performed worse than 85% and 91% of funds in the Target Date 2025 Morningstar Category in the preceding three-year and five-year periods, respectively. During those periods, there have been between 149 and 186 funds in the Target Date 2025 Morningstar Category.

68. At the start of the Class Period in 2014, the assets of the Northern Trust Focus 2025 Fund totaled approximately $33 million. **Table 4.c** below shows the hypothetical growth of $33 million invested in the Northern Trust Focus 2025 Fund and each of the Comparator Funds from January 1, 2014 through June 30, 2020. As the table makes clear, Defendants' failure to

replace the Northern Trust Focus 2025 Fund with one of the Comparator Funds in 2014 resulted

in the Plan losing upwards of $4.7 million in retirement savings.

**Table 4.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $ 33,023,986.00 |
|---|---|---|---|---|
| Northern Trust Focus 2025 Fund W | 36.81% | 4.94% | $ | 45,179,886.01 |
| | | | | |
| Vanguard Target Retirement 2025 | 48.07% | 6.22% | $ | 48,897,015.93 |
| +/- Northern Trust | -11.26% | -1.28% | $ | (3,717,129.92) |
| | | | | |
| T. Rowe Price Target 2025 | 49.25% | 6.35% | $ | 49,286,790.23 |
| +/- Northern Trust | -12.44% | -1.41% | $ | (4,106,904.22) |
| | | | | |
| American Fund 2025 | 51.18% | 6.56% | $ | 49,925,213.17 |
| +/- Northern Trust | -14.37% | -1.62% | $ | (4,745,327.16) |

v.   **Northern Trust Focus 2030 Fund:**

69.   The Northern Trust Focus 2030 Fund's underperformance dates to its inception.

**Table 5.a** below illustrates nearly four-years of underperformance leading up to the Class Period,

relative to benchmark indexes and Comparator Funds.

**Table 5.a**

2010-2013

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2030 | 49.77% | 10.86% |
| Vanguard 2030 | 60.26% | 12.80% |
| T Rowe Price 2030 | 68.14% | 14.19% |
| American Funds 2030 | 68.17% | 14.19% |
| S&P 2030 TD BM | 57.79% | 12.35% |
| DJ US 2030 TD BM | 69.33% | 14.39% |

70.   A prudent fiduciary would have used the indexes and Comparator Funds listed in

**Table 5.a** above as benchmarks for the performance of the Northern Trust Focus 2030 Fund.

Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2030 as the

22

benchmark index for the Northern Trust Focus 2030 Fund. Morningstar also laces the Northern Trust Focus 2030 Fund in its Target Date 2030 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price and Vanguard.

71.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2030 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

72.     **Table 5.b** below illustrates the underperformance of the Northern Trust Focus 2030 Fund from January 1, 2014 through 2020 on an annualized basis. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2030 Fund also significantly underperformed benchmark indexes and the Comparator Funds on a cumulative basis.

**Table 5.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performance |
|---|---|---|---|---|---|---|---|---|---|
| NT Focus 2030 | 3.90% | -2.09% | 7.31% | 15.67% | -5.73% | 19.40% | -1.92% | 39.40% | |
| Vanguard 2030 | 7.18% | -1.03% | 7.83% | 17.53% | -5.85% | 21.07% | -2.34% | 49.67% | -10.27% |
| T Rowe Price 2030 | 6.03% | -0.03% | 7.70% | 19.45% | -6.28% | 22.47% | -2.90% | 51.99% | -12.59% |
| American Funds 2030 | 7.07% | 0.47% | 7.71% | 18.43% | -4.16% | 20.05% | -0.40% | 57.26% | -17.86% |
| S&P 2030 TD BM | 5.65% | -0.31% | 8.32% | 16.19% | -5.99% | 20.37% | -3.58% | 44.64% | -5.24% |
| DJ US 2030 TD BM | 9.35% | -0.15% | 9.12% | 12.67% | -3.29% | 19.18% | -1.53% | 52.35% | -12.95% |

73.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2030 Fund performed worse than 72% and 85% of funds in the Target Date 2030 Morningstar Category for the preceding three-year and five-year periods, respectively. During those periods, there have been between 153 and 194 funds in the Target Date 2030 Morningstar Category.

74.     At the beginning of the Class Period in 2014, the assets of the Northern Trust Focus 2030 Fund totaled approximately $25 million. **Table 5.c** below shows the hypothetical growth of $25 million invested in the Northern Trust Focus 2030 Fund and each of the Comparator Funds from January 1, 2014 through June 30, 2019 rounded to the nearest million. As the table makes

clear, Defendants' failure to replace the Northern Trust Focus 2030 Fund with one of the Comparator Funds in 2014 resulted in the Plan losing upwards of $4.4 million in retirement savings.

**Table 5.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $25,037,811.00 |
|---|---|---|---|---|
| Northern Trust Focus 2030 Fund W | 39.40% | 5.24% | $ | 34,902,631.85 |
| | | | | |
| Vanguard Target Retirement 2030 | 49.67% | 6.40% | $ | 37,472,900.39 |
| +/- Northern Trust | -10.27% | -1.16% | $ | (2,570,268.54) |
| | | | | |
| T. Rowe Price Target 2030 | 51.99% | 6.65% | $ | 38,054,083.82 |
| +/- Northern Trust | -12.59% | -1.41% | $ | (3,151,451.97) |
| | | | | |
| American Fund 2030 | 57.26% | 7.21% | $ | 39,373,429.03 |
| +/- Northern Trust | -17.86% | -1.97% | $ | (4,470,797.17) |

vi.       **Northern Trust Focus 2035 Fund:**

75.     The Northern Trust Focus 2035 Fund's underperformance dates to its inception. **Table 6.a** below, illustrates nearly four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 6.a**

2010-2013

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2035 | 53.37% | 11.54% |
| Vanguard 2035 | 64.59% | 13.57% |
| T Rowe Price 2035 | 71.20% | 14.71% |
| American Funds 2035 | 68.54% | 14.26% |
| S&P 2035 TD BM | 61.14% | 12.95% |
| DJ US 2035 TD BM | 77.78% | 15.83% |

76.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 6.a** above as benchmarks for the performance of the Northern Trust Focus 2035 Fund. Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2035 as

the benchmark index for the Northern Trust Focus 2035 Fund. Morningstar also places the Northern Trust Focus 2035 Fund in its Target Date 2035 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price and Vanguard.

77. Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2035 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

78. **Table 6.b** below illustrates the underperformance of the Northern Trust Focus 2035 Fund from January 1, 2014 through June 30, 2020 on an annualized basis. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2035 Fund also significantly underperformed the benchmark indexes and Comparator Funds a cumulative basis.

**Table 6.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performance |
|------|------|------|------|------|------|------|--------|----------------------|------------------------------|
| NT Focus 2035 | 3.60% | -2.50% | 8.30% | 18.95% | -7.43% | 16.16% | -6.53% | 30.78% | |
| Vanguard 2035 | 7.23% | -1.26% | 8.27% | 19.13% | -6.59% | 22.43% | -3.24% | 51.12% | -20.34% |
| T Rowe Price 2035 | 6.07% | 0.14% | 7.65% | 20.89% | -6.87% | 23.72% | -3.36% | 53.92% | -23.13% |
| American Funds 2035 | 7.03% | 0.60% | 8.00% | 21.09% | -5.14% | 23.22% | -1.14% | 62.71% | -31.92% |
| S&P 2035 TD BM | 5.67% | -0.36% | 8.85% | 17.78% | -6.87% | 22.19% | -4.90% | 46.09% | -15.31% |
| DJ US 2035 TD BM | 9.92% | -0.44% | 10.36% | 14.71% | -4.31% | 22.02% | -2.95% | 57.00% | -26.21% |

79. Put in a broader context, according to Morningstar, the Northern Trust Focus 2035 Fund performed worse than 59% and 82% of all funds in the Target Date 2035 Morningstar Category in the preceding three-year and five-year periods, respectively. During those periods, there have been between 144 and 181 funds in the Target Date 2035 Morningstar Category.

80. At the beginning of the Class Period in 2014, the assets of the Northern Trust Focus 2035 Fund totaled approximately $28.3 million. **Table 6.c** below shows the hypothetical growth of $28.3 million invested in the Northern Trust Focus 2035 Fund and each of its Comparator Funds

from January 1, 2014 through June 30, 2020. As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2035 Fund with one of the Comparator Funds in 2014 resulted in the Plan losing upwards of $9 million in retirement savings.

**Table 6.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $28,341,287.00 |
|---|---|---|---|---|
| Northern Trust Focus 2035 Fund W | 30.78% | 4.22% | $ | 37,066,019.67 |
| | | | | |
| Vanguard Target Retirement 2035 | 51.12% | 6.56% | $ | 42,830,226.61 |
| +/- Northern Trust | -20.34% | -2.34% | $ | (5,764,206.94) |
| | | | | |
| T. Rowe Price Target 2035 | 53.92% | 6.86% | $ | 43,621,494.17 |
| +/- Northern Trust | -23.13% | -2.64% | $ | (6,555,474.50) |
| | | | | |
| American Fund 2035 | 62.71% | 7.78% | $ | 46,113,350.72 |
| +/- Northern Trust | -31.92% | -3.56% | $ | (9,047,331.05) |

     vii.     **Northern Trust Focus 2040 Fund:**

81.     The Northern Trust Focus 2040 Fund's underperformance dates to its inception. **Table 7.a**, below, illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 7.a**

2010-2013

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2040 | 55.11% | 11.86% |
| Vanguard 2040 | 66.87% | 13.97% |
| T Rowe Price 2040 | 72.87% | 15.00% |
| American Funds 2040 | 69.40% | 14.41% |
| S&P 2040 TD BM | 63.58% | 13.39% |
| DJ US 2040 TD BM | 83.91% | 16.83% |

82.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 7.a** above as benchmarks for the performance of the Northern Trust Focus 2040 Fund.

Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2040 as the benchmark index for the Northern Trust Focus 2040 Fund. Morningstar also places the Northern Trust Focus 2040 Fund in its Target Date 2040 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price and Vanguard.

83.    Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2040 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

84.    **Table 7.b** below illustrates the underperformance of the Northern Trust Focus 2040 Fund from January 1, 2014 through June 30, 2020 on an annualized basis. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2040 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 7.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|------|------|------|------|------|------|------|--------|-----------------------|-----------------------------|
| NT Focus 2040 | 3.35% | -2.96% | 8.59% | 19.95% | -8.20% | 23.84% | -7.41% | 37.51% | |
| Vanguard 2040 | 7.13% | -1.60% | 8.72% | 20.70% | -7.34% | 23.85% | -4.12% | 52.22% | -14.71% |
| T Rowe Price 2040 | 6.20% | 0.16% | 7.65% | 22.02% | -7.33% | 24.71% | -3.76% | 55.38% | -17.87% |
| American Funds 2040 | 6.97% | 0.57% | 8.17% | 21.94% | -5.55% | 24.41% | -1.67% | 63.95% | -26.44% |
| S&P 2040 TD BM | 5.69% | -0.39% | 9.21% | 18.87% | -7.42% | 23.35% | -5.79% | 47.05% | -9.54% |
| DJ US 2040 TD BM | 10.34% | -0.69% | 11.36% | 16.46% | -5.24% | 24.57% | -4.26% | 60.60% | -23.10% |

85.    Put in a broader context, according to Morningstar, the Northern Trust Focus 2040 Fund performed worse than 55% and 85% of all funds in the Target Date 2040 Morningstar Category in the preceding three-year and five-year periods, respectively. During those periods, there have been between 152 and 193 funds in the Target Date 2040 Morningstar Category.

86.    At the beginning of the Class Period in 2014, the assets of the Northern Trust Focus 2040 Fund totaled approximately $18.8 million. **Table 7.c** below shows the hypothetical growth

of $18.8 million invested in the Northern Trust Focus 2040 Fund and each of the Comparator Funds from January 1, 2015 through June 30, 2020. As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2040 Fund with one of the Comparator Funds in 2014 resulted in the Plan losing upwards of $4.9 million in lost savings.

**Table 7.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $18,795,976.00 |
|---|---|---|---|---|
| Northern Trust Focus 2040 Fund W | 37.51% | 5.02% | $ | 25,845,440.87 |
| | | | | |
| Vanguard Target Retirement 2040 | 52.22% | 6.68% | $ | 28,610,924.79 |
| +/- Northern Trust | -14.71% | -1.66% | $ | (2,765,483.92) |
| | | | | |
| T. Rowe Price Target 2040 | 55.38% | 7.02% | $ | 29,205,040.92 |
| +/- Northern Trust | -17.87% | -1.99% | $ | (3,359,600.05) |
| | | | | |
| American Fund 2040 | 63.95% | 7.90% | $ | 30,815,477.68 |
| +/- Northern Trust | -26.44% | -2.88% | $ | (4,970,036.81) |

  viii.  **Northern Trust Focus 2045 Fund:**

  87.  The Northern Trust Focus 2045 Fund's underperformance dates to its inception. Table 8.a, below, illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 8.a**

<u>2010-2013</u>

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2045 | 55.15% | 11.87% |
| Vanguard 2045 | 66.83% | 13.96% |
| T Rowe Price 2045 | 72.79% | 14.98% |
| American Funds 2045 | 69.28% | 14.38% |
| S&P 2045 TD BM | 65.39% | 13.71% |
| DJ US 2045 TD BM | 86.93% | 17.32% |

  88.  A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 8.a** above as benchmarks for the performance of the Northern Trust Focus 2045 Fund.

Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2045 as the benchmark index for the Northern Trust Focus 2045 Fund. Morningstar also places the Northern Trust Focus 2045 Fund in its Target Date 2045 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price and Vanguard.

89.    Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2045 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

90.    **Table 8.b** below illustrates the underperformance of the Northern Trust Focus 2045 Fund from January 1, 2014 through June 30, 2020 on an annualized basis. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2045 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 8.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|---|---|---|---|---|---|---|---|---|---|
| NT Focus 2045 | 3.35% | -2.95% | 8.57% | 19.79% | -8.13% | 23.73% | -7.29% | 37.47% | |
| Vanguard 2045 | 7.15% | -1.58% | 8.88% | 21.45% | -7.89% | 24.92% | -4.90% | 52.60% | -15.13% |
| T Rowe Price 2045 | 6.13% | 0.16% | 7.70% | 22.40% | -7.57% | 25.39% | -4.21% | 55.56% | -18.09% |
| American Funds 2045 | 7.08% | 0.65% | 8.29% | 22.35% | -5.54% | 24.71% | -1.76% | 65.27% | -27.80% |
| S&P 2045 TD BM | 5.66% | -0.45% | 9.53% | 19.54% | -7.73% | 24.02% | -6.33% | 47.62% | -10.15% |
| DJ US 2045 TD BM | 10.59% | -0.86% | 12.05% | 17.68% | -5.98% | 26.49% | -5.32% | 62.78% | -25.31% |

91.    Put in a broader context, according to Morningstar, the Northern Trust Focus 2045 Fund performed worse than 78% and 95% of all funds in the Target Date 2045 Morningstar Category in the preceding three-year and five-year periods, respectively. During those periods, there have been between 144 and 181 funds in the Target Date 2045 Morningstar Category.

92.    At the beginning of the Class Period in 2014, the assets of the Northern Trust Focus 2045 Trust Fund totaled approximately $13.6 million. **Table 8.c** below shows the hypothetical growth of $13.6 million invested in the Northern Trust Focus 2045 Fund and each of the

comparator funds from January 1, 2014 through June 30, 2020. As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2045 Fund with one of the Comparator Funds in 2014 resulted in the Plan losing upwards of $3.7 million in retirement savings.

**Table 8.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $13,550,154.00 |
|---|---|---|---|---|
| Northern Trust Focus 2045 Fund W | 37.47% | 5.02% | $ | 18,627,559.74 |
| | | | | |
| Vanguard Target Retirement 2045 | 52.60% | 6.72% | $ | 20,678,179.80 |
| +/- Northern Trust | -15.13% | -1.70% | $ | (2,050,620.06) |
| | | | | |
| T. Rowe Price Target 2045 | 55.56% | 7.03% | $ | 21,078,314.43 |
| +/- Northern Trust | -18.09% | -2.02% | $ | (2,450,754.69) |
| | | | | |
| American Fund 2045 | 65.27% | 8.04% | $ | 22,393,908.74 |
| +/- Northern Trust | -27.80% | -3.02% | $ | (3,766,349.00) |

ix.     **Northern Trust Focus 2050 Fund:**

93.     The Northern Trust Focus 2050 Fund's underperformance dates to its inception. **Table 9.a** below illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 9.a**

2010-2013

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2050 | 55.22% | 11.88% |
| Vanguard 2050 | 66.85% | 13.96% |
| T Rowe Price 2050 | 72.84% | 14.99% |
| American Funds 2050 | 69.37% | 14.40% |
| S&P 2050 TD BM | Not Available | |
| DJ US 2050 TD BM | 87.21% | 17.36% |

94.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 9.a** above as benchmarks for the performance of the Northern Trust Focus 2050 Fund. Morningstar also places the Northern Trust Focus 2050 Fund in its Target Date 2050 Morningstar

Category along with the Comparator Funds managed by American Funds, T. Rowe Price and Vanguard.

95.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2050 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

96.     **Table 9.b** below illustrates the underperformance of the Northern Trust Focus 2050 Trust from January 1, 2014 through June 30, 2020 on an annualized basis. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2050 Trust also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 9.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performance |
|---|---|---|---|---|---|---|---|---|---|
| NT Focus 2050 | 3.34% | -2.96% | 8.55% | 19.61% | -8.03% | 23.57% | -7.21% | 37.30% | |
| Vanguard 2050 | 7.18% | -1.58% | 8.87% | 21.39% | -7.90% | 24.97% | -4.91% | 52.59% | -15.29% |
| T Rowe Price 2050 | 6.18% | 0.20% | 7.70% | 22.35% | -7.58% | 25.32% | -4.16% | 55.63% | -18.33% |
| American Funds 2050 | 7.04% | 0.66% | 8.33% | 22.58% | -5.62% | 24.97% | -1.72% | 65.84% | -28.54% |
| S&P 2050 TD BM | 5.70% | -0.46% | 9.74% | 20.20% | -7.95% | 24.33% | -6.58% | 48.38% | -11.08% |
| DJ US 2050 TD BM | 10.68% | -0.91% | 12.38% | 18.25% | -6.39% | 27.56% | -5.98% | 63.60% | -26.30% |

97.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2050 Fund performed worse than 74% and 90% of all funds in the Target Date 2050 Morningstar Category in the preceding three-year and five-year periods, respectively. During those periods, there have been between 152 and 193 funds in the Target Date 2050 Morningstar Category.

98.     At the beginning of the Class Period in 2014, the assets of the Northern Trust Focus 2050 Fund totaled approximately $7.8 million. **Table 9.c** below shows the hypothetical growth of $7.8 million invested in the Northern Trust Focus 2050 Fund and each of the comparator funds from January 1, 2014 through June 30, 2020. As the table makes clear, Defendants' failure to

replace the Northern Trust Focus 2050 Fund with one of the Comparator Funds in 2014 resulted in the Plan losing upwards of $2.2 million in retirement savings.

**Table 9.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $ 7,762,024.00 |
|---|---|---|---|---|
| Northern Trust Focus 2050 Fund W | 37.30% | 5.00% | $ | 10,657,416.84 |
|  |  |  |  |  |
| Vanguard Target Retirement 2050 | 52.59% | 6.72% | $ | 11,843,884.42 |
| +/- Northern Trust | -15.29% | -1.72% | $ | (1,186,467.58) |
|  |  |  |  |  |
| T. Rowe Price Target 2050 | 55.63% | 7.04% | $ | 12,079,871.13 |
| +/- Northern Trust | -18.33% | -2.04% | $ | (1,422,454.30) |
|  |  |  |  |  |
| American Fund 2050 | 65.84% | 8.09% | $ | 12,872,734.07 |
| +/- Northern Trust | -28.54% | -3.10% | $ | (2,215,317.23) |

x. **Northern Trust Focus 2055 Fund:**

99. The Northern Trust Focus 2055 Fund's underperformance dates to its inception. **Table 10.a** below illustrates nearly four years of underperformance leading up to the Class Period, relative to a benchmark index and Comparator Funds.

**Table 10.a**

2010-2013

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2055 | 38.72% | 10.89% |
| Vanguard 2055 | 48.76% | 13.36% |
| T Rowe Price 2055 | 51.88% | 14.11% |
| American Funds 2055 | 50.24% | 13.72% |
| S&P 2055 TD BM | Not Available | |
| DJ US 2055 TD BM | 63.00% | 16.68% |

100. A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 10.a** (above) and **Table 10.b** (below) as benchmarks for the performance of the Northern Trust Focus 2050 Fund. Morningstar also places the Northern Trust Focus 2055 Fund in its Target

Date 2055 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price and Vanguard.

101.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2055 Fund from the Plan.  Predictably, the underperformance continued throughout the Class Period.

102.     **Table 10.b** below illustrates the underperformance of the Northern Trust Focus 2055 Fund from January 1, 2014 through June 30, 2020 on an annualized basis.  Furthermore, the differences in annual performance are even pronounced when compounded over time.  As the table demonstrates, the Northern Trust Focus 2055 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 10.b**

| Fund | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 1H2020 | Cumulative Compounded | Under(-)/Out (+) Performance |
|---|---|---|---|---|---|---|---|---|---|
| NT Focus 2055 | 3.30% | -2.92% | 8.53% | 19.42% | -7.97% | 23.43% | -7.01% | 37.29% | |
| Vanguard 2055 | 7.21% | -1.72% | 8.87% | 21.37% | -7.87% | 24.97% | -4.95% | 52.35% | -15.05% |
| T Rowe Price 2055 | 6.19% | 0.19% | 7.74% | 22.32% | -7.61% | 25.36% | -4.34% | 55.32% | -18.03% |
| American Funds 2055 | 7.01% | 0.65% | 8.28% | 22.63% | -5.65% | 25.02% | -1.79% | 65.67% | -28.38% |
| S&P 2055 TD BM | 5.65% | -0.52% | 9.94% | 20.48% | -7.98% | 24.51% | -6.78% | 48.70% | -11.41% |
| DJ US 2055 TD BM | 10.68% | -0.91% | 12.39% | 18.28% | -6.50% | 27.81% | -6.15% | 63.51% | -26.22% |

103.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2055 Fund performed worse than 84% and 98% of funds in the Target Date 2055 Morningstar Category in the preceding three-year and five-year periods, respectively.  During those periods, there have been between 137 and 180 funds in the Target Date 2055 Morningstar Category.

104.     At the beginning of the Class Period in 2014, the assets of the Northern Trust Focus 2055 Fund totaled approximately $2.9 million.  **Table 10.c** below shows the hypothetical growth of $2.9 million invested in the Northern Trust Focus 2055 Fund and each of the Comparator Funds from January 1, 2014 through June 30, 2020.  As the table makes clear, Defendants' failure to

replace the Northern Trust Focus 2055 Fund with one of the Comparator Funds in 2014 resulted in the Plan losing upwards of $825,000 in retirement savings.

**Table 10.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $ 2,909,610.00 |
|---|---|---|---|---|
| Northern Trust Focus 2055 Fund W | 37.29% | 5.00% | $ | 3,994,644.53 |
| | | | | |
| Vanguard Target Retirement 2055 | 52.35% | 6.69% | $ | 4,432,665.32 |
| +/- Northern Trust | -15.05% | -1.69% | $ | (438,020.79) |
| | | | | |
| T. Rowe Price Target 2055 | 55.32% | 7.01% | $ | 4,519,194.13 |
| +/- Northern Trust | -18.03% | -2.01% | $ | (524,549.61) |
| | | | | |
| American Fund 2055 | 65.67% | 8.08% | $ | 4,820,275.71 |
| +/- Northern Trust | -28.38% | -3.08% | $ | (825,631.19) |

      **B.**      **Defendants Breached Their Fiduciary Duties by Selecting and Maintaining Investment Options with High Expenses to Pay for the Plan's Recordkeeping Services, and Engaged in Prohibited Transactions**

105.     Furthermore, Defendants violated their fiduciary duties to Plan participants by imprudently selecting and then failing to remove non-proprietary funds that charge excessive fees that pay for the Plan's recordkeeping services. These fees, in turn, benefited Northern Trust, and therefore, Northern Trust's selection of and maintenance of these funds were both breaches of the duty of loyalty (by not focusing exclusively on the Plan participants and beneficiaries' well-being) and prohibited transactions with parties in interest.

106.     The Plan's 2019 Form 5500, Schedule C, discloses that Northern Trust receives indirect compensation from the Plan. This creates an incentive for Northern Trust to push up the assets being devoted to the Plan so that Northern Trust can earn more money, rather than because it is truly in the best interests of Plan participants. The Northern Trust Plan has approximately $2 billion in assets, for which Northern Trust was paid approximately $2,000,000 in recordkeeping

fees. This amounts to approximately $160 per participant. This is approximately five times the industry standard of $30 per participant for plans of similar size, and, therefore, is excessive and unreasonable. Moreover, the recordkeeping fee is being paid out of the Plan's investments rather than a flat dollar amount per participant. This is in contrast to the prevailing industry practice, where a large fund should charge a smaller flat fee per participant charge that is not based on the assets under management.

107.     In addition, Northern Trust has made additional money (though the fees are not disclosed) off of the other seven proprietary investment options it also has in the Plan: the Northern Trust Focus Income Fund (with approximately $11 million in AUM); the Northern Trust International Equity Fund (with approximately $188 million in AUM); the Northern Trust Large Cap Equity Fund (with approximately $577 million in AUM); the Northern Trust Mid Cap Equity Fund (with approximately $114 million in AUM); the Northern Trust Small Cap Equity Fund (with approximately $82 million in AUM); the Northern Trust Collective Aggregate Bond Index (with approximately $107 million in AUM); and the Northern Trust Inflation Protection Securities Index (with approximately $30 million in AUM). Together, Northern Trust invests approximately three quarters of its AUM in proprietary funds: approximately $1.5 billion out of approximately $2 billion in total.

108.     Furthermore, Northern Trust deliberately forced Plan participants to invest in its proprietary funds by limiting the options for non-proprietary funds. Approximately two-thirds of the options Northern Trust offers in the Plan are its own proprietary funds. For example, if a Plan participant wants to invest in a passively managed stock fund, he or she would have to select a Northern Trust fund because the Plan does not include any non-proprietary passive vehicles.

109. Northern Trust knowingly kept some of its investments in higher fee options. Their Sourcebook states that there was an Investment Fund Change where Northern Trust replaced the Wells Fargo Advantage Core Bond Fund with another fund with a similar investment objective but a lower expense ratio, *i.e.* a lower fee. Yet Northern Trust did not apply the same standard to its own funds, although the Sourcebook reveals that there is no historical performance for its Northern Trust Focus Funds.

110. Northern Trust's Sourcebook also shows that it understood its fiduciary duties, by describing how "[t]he people who operate your plan, called 'fiduciaries' of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries." Thus, Northern Trust knowingly selected and then retained low-performing proprietary plans, despite knowing of better options, so that it could generate more income for itself, at the expense of plan participants.

111. Moreover, Northern Trust populates its Plan with non-proprietary funds with excessive fees. These funds include: DFA Emerging Markets Core Equity Portfolio, fee is 48 basis points (or .48%); Jennison Small Cap Equity Fund, fee is 88 basis points (or .88%); PIMCO All Asset Fund, fee is 1.01 basis points (or 1.01%); and PIMCO International Bond Fund, fee is 56 basis points (or .56%).

112. By comparison, the following comparable funds charge the following fees:

| | | Morningstar Rank | Expense Ratio |
|---|---|---|---|
| **Northern Trust Plan investment option** | **DFA Emerging Markets Core Equity Portfolio** | **N/A** | **0.48%** |
| Comparable 1 | Vanguard Value Index Adm | 4-Stars | 0.05% |
| Comparable 2 | Fidelity Series Emerging Markets Opps | 4-Stars | 0.01% |
| Comparable 3 | American Century NT Emerging Markets G | 4-Stars | 0.01% |
| **Northern Trust Plan investment option** | **Jennison Small Cap Equity Fund** | **N/A** | **0.88%** |

| Comparable 1 | JP Morgan Small Cap Growth R6 | 5-Stars | 0.75% |
|---|---|---|---|
| Comparable 2 | Putnam Small Cap Growth R6 | 4-Stars | 0.84% |
| Comparable 3 | Lord Abbett Developing Growth R6 | 4-Stars | 0.59% |
| **Northern Trust Plan investment option** | **PIMCO All Asset Fund** | **N/A** | **1.01%** |
| Comparable 1 | AllianzGI Global Dynamic Allocation P | 4-Stars | 0.84% |
| Comparable 2 | Columbia Thermostat Inst | 5-Stars | 0.64% |
| Comparable 3 | Goldman Sachs Balanced Strategy R6 | 4-Stars | 0.71% |
| **Northern Trust Plan investment option** | **PIMCO International Bond Fund** | **N/A** | **0.56%** |
| Comparable 1 | American Funds Capital World Bond R6 | 4-Stars | 0.49% |
| Comparable 2 | DFA World ex US Government Fxd Inc I | 4-Stars | 0.20% |
| Comparable 3 | T Rowe Price Global Multi-Sector Bd I | 4-Stars | 0.50% |

## CLASS ACTION ALLEGATIONS

113. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes any participant or beneficiary of a retirement plan to bring an action individually on behalf of that plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109(a). Such claims are brought "in a representative capacity on behalf of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985).

114. The claims set forth in this action meet the requirements of Rule 23, and class certification would be appropriate with respect to the following class (the "Class"):

All participants and beneficiaries of the Plan who invested in any of Northern Trust Focus Target Retirement Trusts from November 2, 2014 through December 31, 2019, excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative function.

115. The Class includes tens of thousands of members and is so large that joinder of all its members is impracticable.

116.     There are numerous questions of law and fact common to the Class because the claims asserted herein arise out of a singular course of common conduct by Defendants that affected all class members through their participation in the Plan in precisely the same way, in violation of precisely the same legal duties.  Common questions of law and fact include the following, without limitation:

•     Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a);

•     Whether Defendants breached their fiduciary duties to the Plan by employing an imprudent process for monitoring and evaluating Plan investment options;

•     Whether Defendants breached their fiduciary duties to the Plan by selecting and retaining funds that charge excessive fees to pay for the Plan's recordkeeping fees to Northern Trust;

•     Whether Defendants engaged in prohibited transactions by causing the Plan to add or maintain Northern Trust Focus Funds, which incurred management fees that benefited Northern Trust;

•     Whether Plaintiff's claims require similar inquiries and proof of the claims and therefore implicate the same set of concerns for all proposed members of the Class;

•     What are the losses to the Plan resulting from each breach of fiduciary duty and prohibited transaction; and

•     What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty and prohibited transaction.

117.     There are no substantial individual questions among Class members on the merits of this action.

118. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a participant during the time period at issue in this action and all participants in the Plan were harmed by Defendants' misconduct.

119. Plaintiff is an adequate representative of the Class because she was a participant in the Plan during the Class Period, has no interest that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent attorneys to represent the Class.

120. Certification of the claims asserted herein would be appropriate under Rule 23(b)(1)(A) or (B). Prosecution of separate actions for these breaches of fiduciary duties and prohibited transactions by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. §1109(a). In addition, an adjudication of the claims asserted herein by any Plan participant would, as a practical matter, be dispositive of the interests of all other Plan participants. As this Court has recognized several times, "[b]ecause of ERISA's distinctive 'representative capacity' and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a [Rule 23](b)(1) class." *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011).

121. Alternatively, this action should be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B). A class action is the superior method for the fair and efficient adjudication of this controversy because common questions of law and fact predominate over questions affecting only individual class members, and because, in light of the representative

nature of the claims at issue, a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy.

122.    Plaintiff's counsel, Law Offices of Michael M. Mulder and Scott+Scott Attorneys at Law LLP will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## CAUSES OF ACTION

### COUNT I
**Breach of Fiduciary Duty of Prudence Related to the Northern Trust Focus Funds**
**(Violation of ERISA §404, 29 U.S.C. §1104)**
**(Against All Defendants)**

123.    Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

124.    As alleged above, the Defendants were express fiduciaries for the Plan.

125.    ERISA § 404, 29 U.S.C. §1104, requires ERISA fiduciaries to perform their fiduciary duties and responsibilities prudently, as would an experienced ERISA fiduciary, and loyally, exclusively in the interest of the plan and its participants for the purpose of providing benefits.

126.    Defendants' fiduciary duties include administering the Plan with the care, skill, diligence, and prudence required by ERISA. As such, Defendants must evaluate and monitor the Plan's investments on an ongoing basis, eliminate imprudent investments, and take all necessary steps to ensure the Plan's assets are invested prudently.

127.    As the Supreme Court confirmed, ERISA's "duty of prudence involves a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble*, 575 U.S. at 523.

128.    Defendants breached their fiduciary duties through their imprudent process for investigating, evaluating, and monitoring investments.  The faulty process resulted in a plan loaded

with the Northern Trust Focus Funds that have exhibited chronic poor performance for almost a decade. Defendants failed to remove the Funds despite their historical underperformance relative to other target date collective investment trusts and relevant benchmark indexes.

129. By failing to adequately consider better-performing investment products for the Plan, Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

130. Defendants' breach of fiduciary duty has substantially impaired the Plan's use, its value, and its investment performance for all Class Members.

131. As a direct and proximate result of Defendants' breaches of fiduciary duty, the Plan and each of its participants who invested in the Funds have suffered tens of millions of dollars of damages and lost-opportunity costs which continue to accrue.

132. Defendants' actions, and failures to act, violated the duties of prudence and loyalty contained in ERISA § 404(a).

133. ERISA § 502(a)(2) permits plan participants, such as Plaintiff, to bring civil actions for "appropriate relief" under ERISA § 409.

134. Under ERISA § 409(a), 29 U.S.C. § 1109(a), a fiduciary that violates any of ERISA's duties, including ERISA § 404(a), must "make good" to the plan the losses to the plan resulting from its violations, and is "subject to such other equitable or remedial relief as the court may deem appropriate."

135. Thus, under ERISA §§ 502(a)(2) and 409(a), 29 U.S.C. §§ 1132(a)(2) and 1109(a), Defendants are liable, in an amount to be determined at trial, for the losses to the Plan caused by

their violations of ERISA § 404(a), and are "subject to such other equitable or remedial relief" as the Court "may deem appropriate."

136.     Under ERISA § 502(a)(3), Defendants are also subject to appropriate equitable relief including, but not limited to, constructive trust and equitable surcharge.

## COUNT II
**Breach of Fiduciary Duties Related to Unreasonable Investment Management and Recordkeeping Fees**
**(Violation of ERISA §404, 29 U.S.C. §1104)**
**(Against All Defendants)**

137.     Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

138.     Defendants breached their duties of loyalty and prudence under 29 U.S.C. §1104(a)(1)(A) and (B) by selecting and retaining as Plan investments non-proprietary funds that charge excessive fees relative to other investment options that were available to the Plan at all relevant times.

139.     Defendants further breached their fiduciary duties by selecting and retaining such funds that charge excessive fees to pay for the Plan's excessive recordkeeping fees to Northern Trust.  These fees, in turn, benefited Northern Trust, and therefore, Northern Trust's selection of and maintenance of these funds were breaches of the duties of prudence and loyalty (by not focusing exclusively on the Plan participants and beneficiaries' well-being).

140.     Total Plan losses will be determined at trial after complete discovery in this case and are continuing.

141.     Each Defendant is personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate.

## COUNT III
### Breach of Co-Fiduciary Duty
### (Violation of ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3))
### (Against All Defendants)

142.    Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

143.    A fiduciary with respect to a plan is liable for the breach "of another fiduciary" for the same plan if "he participates knowingly in, or knowingly undertakes to conceal, an act or omissions of such other fiduciary, knowing such act or omission is a breach," ERISA § 405(a)(1), or if, "by his failure to comply with [his fiduciary duties] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach," ERISA § 405(a)(2), or if "he has knowledge of a breach by some other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." ERISA § 405(a)(3).

144.    Pursuant to § 405 of ERISA, 29 U.S.C. § 1105, Defendants are also liable as co-fiduciaries with respect to the above-described violations because they participated knowingly in their co-fiduciaries' breaches; enabled other fiduciaries to violate ERISA by virtue of their own breaches of fiduciary duty; knowingly undertook to conceal those breaches; enabled their co-fiduciaries to commit the breaches and failed to make any reasonable efforts to remedy the breaches.

145.    ERISA § 502(a)(2) permits plan participants, such as Plaintiff, to bring civil actions for "appropriate relief" under ERISA § 409.

146.    Under ERISA § 409(a), a fiduciary that violates any of ERISA's duties, including ERISA § 405(a)(1), (a)(2) and (a)(3), must "make good" to the Plan the losses to the Plan resulting

from its violations of ERISA § 405(a)(1), (a)(2) and (a)(3), and is "subject to such other equitable or remedial relief as the court may deem appropriate."

147.    Thus, Defendants are liable, in an amount to be determined at trial, for the losses to the Plan caused by their violations of ERISA § 405(a)(1), (a)(2) and (a)(3), and are "subject to such other equitable or remedial relief" as the Court "may deem appropriate."

148.    Under ERISA § 502(a)(3), Defendants are also subject to appropriate equitable relief including, but not limited to, constructive trust and equitable surcharge.

**COUNT IV**
**Failure to Monitor**
**(Against All Defendants)**

149.    Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

150.    Defendants had a duty to monitor the performance of each individual to whom they delegated any fiduciary responsibilities.

151.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

152.    To the extent any of the Defendant's fiduciary responsibilities were delegated to another fiduciary, the Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

153.    Defendants breached their fiduciary monitoring duties by, among other things:

a. failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plan;

b. failing to monitor their appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

c. failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that the Funds were prudent; and

d. failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plan to the detriment of Plan participants' retirement savings.

154. Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

a. failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of its appointees' imprudent actions and omissions with respect to the Plan;

b. failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

c. failing to implement a process to ensure that the appointees monitored the performance of Plan investments; and

       d.      failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plan, all to the detriment of Plan participants' retirement savings.

155.    As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Defendants and the other delegating fiduciaries prudently discharged their fiduciary monitoring duties, the Plan would not have suffered these losses.

### COUNT V
### Prohibited Transactions
### (Violation of ERISA §406, 29 U.S.C. §1106)
### (Against All Defendants)

156.    Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

157.    Defendants caused the Plan to add or maintain Northern Trust Focus Funds during the Class Period, which incurred management fees that benefited Northern Trust, the plan sponsor, which (along with its subsidiaries) are parties in interest, constituting prohibited transactions under ERISA §406.

158.    As a direct and proximate result of these prohibited conflicted party-in-interest or fiduciary transactions, the Plan paid out approximately $2 million in unjustifiably high investment management and other fees that were prohibited by ERISA, as well as incurred millions of dollars in losses because of the Northern Trust Focus Funds' poor performance.

159.    Under 29 U.SC. §§1109(a) and 1132(a)(2), Defendants are liable to restore all losses suffered by the Plan as a result of the prohibited transactions and Northern Trust is required to disgorge revenues it received from the fees paid by the Plan to Northern Trust and its subsidiaries, as well as any other appropriate equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, prays for judgment as follows:

A.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a), appoint Plaintiff as the class representative, and appoint the Law Offices of Michael M. Mulder and Scott+Scott Attorneys at Law LLP as Class Counsel;

B.      Declare that Defendants breached their fiduciary duties to the Plan;

C.      Declare that Defendants engaged in prohibited transactions with parties in interest;

D.      Enjoin Defendants from further violations of their fiduciary responsibilities, obligations, and duties and from further engaging in transactions prohibited by ERISA;

E.      Order that Defendants make good to the Plan the losses resulting from their serial breaches of fiduciary duty;

F.      Order that Defendants disgorge any profits that they have made through their breaches of fiduciary duty and impose a constructive trust and/or equitable lien on any funds received by Defendants therefrom;

G.      Order any other available equitable relief, or remedies, including but not limited to, the imposition of a surcharge, the restoration of the Plan to the position they would have been but for the breaches of fiduciary duty; and any other kind of relief and/or damages available pursuant to ERISA §§ 409 and 502(a)(2) and (3);

H.      Reform the Plan to include only prudent investments;

I.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the Plan;

J.      Order Defendants to pay interest to the extent it is allowed by law; and

K.      Award such other and further relief as the Court deems equitable and just.

Dated: January 13, 2021                    Respectfully submitted,

                                            */s/ Michael M. Mulder*
                                           Michael M. Mulder (Bar No. 1984268)
                                           Elena N. Liveris (Bar No. 6297048)
                                           THE LAW OFFICES OF MICHAEL M.
                                           MULDER
                                           1603 Orrington, Suite 600
                                           Evanston, IL 60201
                                           Telephone: 312-263-0272
                                           mmmulder@mmulderlaw.com
                                           eliveris@mmulderlaw.com

                                           Garrett W. Wotkyns (*pro hac vice*)
                                           SCOTT+SCOTT ATTORNEYS AT LAW LLP
                                           8068 East Del Acero Drive
                                           Scottsdale, AZ 85258
                                           Telephone:  480-889-3514
                                           gwotkyns@scott-scott.com

                                           Geoffrey M. Johnson (*pro hac vice forthcoming*)
                                           SCOTT+SCOTT ATTORNEYS AT LAW LLP
                                           12434 Cedar Road, Suite 12
                                           Cleveland Heights, OH 44106
                                           Telephone: (216) 229-6088
                                           gjohnson@scott-scott.com

                                           Jing-Li Yu (*pro hac vice forthcoming*)
                                           SCOTT+SCOTT ATTORNEYS AT LAW LLP
                                           The Helmsley Building
                                           230 Park Avenue, 17th Floor
                                           New York, NY 10169
                                           Telephone: (212) 223-6444
                                           jyu@scott-scott.com

                                           *Attorneys for Plaintiff*

48

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2021, I electronically filed the forgoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

DATED this 13th day of January, 2021       By: *_/s/ Michael M. Mulder_*