# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATRINA L. CALLAWAY, on Behalf of Herself and All Others Similarly Situation, | |
| Plaintiff, | No. 1:20-cv-6497 |
| v. | JUDGE JOHN Z. LEE |
| THE NORTHERN TRUST COMPANY; THE NORTHERN TRUST COMPANY EMPLOYEE BENEFIT ADMINISTRATIVE COMMITTEE; and DOES 1-30, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT**

This is the second motion to dismiss that defendants The Northern Trust Company and The Northern Trust Company Employee Benefit Administrative Committee (together, "Northern Trust") have filed with respect to plaintiff Katrina Callaway's claims challenging Northern Trust's selection of investment options for The Northern Trust Company Thrift-Incentive Plan (the "Plan"). Shortly after plaintiff, a participant in the Plan, filed her initial complaint, Northern Trust moved to dismiss on the grounds that plaintiff's sole asserted basis for her breach of fiduciary duty claims—that 10 of the Plan's investment options allegedly underperformed over a period of years—cannot form the basis of an ERISA claim under controlling Seventh Circuit precedent. In its motion, Northern Trust also pointed out that plaintiff lacks standing to assert claims about funds in which she did not invest. Rather than respond to Northern Trust's original motion to dismiss, plaintiff chose to file an amended complaint, effectively conceding the merits of Northern Trust's motion.

In her amended complaint, however, plaintiff does not correct the shortcomings of her claim that certain of the Plan's investment options have underperformed. Of the 159 paragraphs that comprise the amended complaint, 121 are substantively identical to paragraphs included in plaintiff's initial complaint, and plaintiff does not add the type of factual allegations that would be required to make her original claims viable. Rather, she throws in two additional unsupported assertions: that the Plan invested in funds with "excessive fees" and that Northern Trust's inclusion of its own funds in the Plan's investment line-up constituted prohibited transactions in violation of ERISA. Plaintiff's original theory and her two new theories all fail as a matter of law.

First, the Seventh Circuit's controlling decision in *Divane v. Northwestern University*, 992 (7th Cir. 2020), *petition for cert. filed*, No. 19-1401 (U.S. June 19, 2020), still

1

requires dismissal of plaintiff's underperformance claims. In *Divane*, the Seventh Circuit held that allegations of fund underperformance (much better developed than plaintiff's here) were insufficient to plead breach of a fiduciary's duty of prudence, because underperformance alone does not suggest an imprudent fiduciary process. The amended complaint therefore cannot stand on plaintiff's bare allegations that Plan investment options "underperformed."

Second, plaintiff's new allegations regarding fees paid by the Plan are also insufficient under *Divane*. In her vague allegations about "excessive fees," plaintiff cannot even clearly articulate what the supposedly excessive fees are, much less plead that Northern Trust's fiduciary process was somehow deficient, as the Seventh Circuit—and basic pleading requirements—demand to support a claim for breach of fiduciary duty.

Third, plaintiff cannot salvage either of her claims for fiduciary breach, or state a separate prohibited transaction claim, by pointing to Northern Trust's inclusion of its own funds among the Plan's investment options. Northern Trust's selection of these funds and receipt of management fees are expressly permitted by ERISA, and do not involve Plan assets or constitute prohibited transactions in violation of ERISA § 406.

Finally, as Northern Trust made clear in its first motion to dismiss, plaintiff also lacks standing to bring claims with respect to any fund in which she did not invest. Plaintiff invested in only one of the 27 investment funds offered by the Plan. She cannot have suffered any injury in fact related to the 19 others she challenges, and those claims should be dismissed.

## BACKGROUND

Plaintiff alleges that she participates in the Plan.[1] Compl. ¶ 11. She asserts claims for breaches of fiduciary duty pursuant to ERISA §§ 404 and 405, and for engaging in

---

[1] The facts referenced herein are derived from the amended complaint and from Northern Trust's sourcebook for the Plan, dated October 2019 (the "Plan Sourcebook," attached as Exhibit A to the

2

prohibited transactions in violation of ERISA § 406. Defendant The Northern Trust Company is a named fiduciary and the sponsor of the Plan, with responsibility for its administration and management. *Id.* ¶ 12. Defendant The Northern Trust Company Employee Benefit Administrative Committee is the Plan's named administrator. *Id.* ¶ 13.

The Plan is a section 401(k) profit-sharing plan that manages over $2 billion in assets and provides for retirement income for tens of thousands of current and former Northern Trust employees. *Id*. ¶¶ 28-29. Like many § 401(k) plans, the Plan offers participants a range of different investment options. These include the Northern Trust Focus Target Retirement Trusts (the "Focus Funds"), *id.* ¶ 2, as well as 16 other funds. Plan Sourcebook at 18-22. Plaintiff alleges that the Plan offers 11 Focus Funds, and she challenges 10 of those funds as well as 11 others; however, she invested in only one of the Focus Funds. *Id.* ¶¶ 9, 29, 35.

The Focus Funds are target date funds. They offer each participant the ability to invest in a diversified portfolio of underlying investments tailored to his or her expected retirement date. *Id.* ¶ 3. During the relevant period, the Plan has offered Focus Funds with target retirement dates ranging from 2010 to 2055. *Id.* ¶¶ 4-97. "Target date funds have become increasingly popular retirement savings options," with "21% of all 401(k) assets in the United States" held in target date funds as of the end of 2016. *Id.* ¶ 3. Plaintiff challenges the performance of 10 of the Focus Funds, contrasting them with three "comparator" funds for each challenged fund, for which she claims analyses by Morningstar, Inc. indicate better performance than the challenged funds. *Id.* ¶¶ 38-42, 128. Plaintiff asserts that Northern Trust's decision to

---

Declaration of Craig C. Martin filed concurrently herewith), which is incorporated by reference in the amended complaint. Compl. ¶¶ 109-10; *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.").

select and to retain the Focus Funds therefore was imprudent and cost Plan participants "upwards of $34 million in retirement savings since 2014." *Id.* ¶ 44.

Plaintiff asserts five claims for relief. In Count I, plaintiff asserts that Northern Trust breached its fiduciary duty of prudence by failing to remove the Focus Funds or "to adequately consider better-performing investment products for the Plan." *Id.* ¶¶ 123-36. In Counts II and III, plaintiff asserts that Northern Trust breached its fiduciary duties of loyalty and prudence, or its duties as co-fiduciary, by selecting and retaining investment options that resulted in excessive fees that were paid to and benefited Northern Trust. *Id.* ¶¶ 137-48. In Count III, plaintiff asserts that Northern Trust has co-fiduciary liability. *Id.* ¶¶ 142-48. In Count IV, plaintiff asserts that Northern Trust breached its duty to monitor the performance of individuals to whom it delegated fiduciary duties. *Id.* ¶¶ 149-55. In Count V, plaintiff asserts that Northern Trust engaged in prohibited transactions by causing the Plan to invest in the Focus Funds. *Id.* ¶¶ 156-59. As shown below, none of these counts meets the most basic pleading requirement: alleging the essential elements of plaintiff's claims.

## ARGUMENT

To survive Northern Trust's motion to dismiss, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Doing so requires "allegations plausibly suggesting (not merely consistent with)" her legal assertions. *Id.* at 555. Although the court must accept plaintiff's complaint allegations as true, this principle "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Because plaintiff's allegations fail to meet this standard, her amended complaint should be dismissed in its entirety.

4

I. **COUNTS I, II, AND III SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF UNDER RULE 12(b)(6).**

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that the defendants are plan fiduciaries, that they breached their fiduciary duties, and that their breach resulted in harm to the plaintiff. *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). To allege a breach of the duty of prudence in connection with an investment decision, a plaintiff must allege that the defendants' process, or "conduct in arriving at an investment decision," was improper. *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996). Clarity and specificity in pleading such claims are especially important, because "the content of the duty of prudence turns on the circumstances" and requires a "careful, context-sensitive scrutiny of a complaint's allegations." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (quotations omitted). To state a claim for breach of the duty of loyalty, a plaintiff must allege facts "sufficient to raise a plausible inference that [the defendant] ha[s] engaged in self-dealing or ha[s] taken any of the actions alleged for the purpose of benefitting [itself] … at the expense of Plan participants, or that [the defendant] ha[s] acted under any actual or perceived conflict of interest in administering the Plan." *White v. Chevron Corp.*, No. 16-cv-793-PJH, 2017 WL 2352137, at *6 (N.D. Cal. May 31, 2017).

    A.    <u>Plaintiff's Allegations Of Underperformance Are Insufficient.</u>

Plaintiff does not allege facts plausibly suggesting that Northern Trust's process for selecting the challenged funds was imprudent. Although she purports to allege that Northern Trust breached its fiduciary duties "[b]y failing to adequately consider better-performing investment products for the Plan," Compl. ¶ 129, she concedes that she "does not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan, including Defendants' processes for monitoring and removing Plan investments," *id.* ¶ 10.

5

Instead, plaintiff asserts in Count I that Northern Trust's process "*resulted in* a plan loaded with the . . . Focus Funds that have exhibited chronic poor performance for almost a decade." *Id.* ¶ 128 (emphasis added). Such conclusory, post-hoc allegations of underperformance do not state a claim for breach of ERISA's duty of prudence.

The Seventh Circuit has repeatedly held that "'the ultimate outcome of an investment is not proof of imprudence'" under ERISA. *Divane*, 953 F.3d at 992 (quoting *DeBruyne v. Equitable Life Assurance Soc'y of the United States*, 920 F.2d 457, 465 (7th Cir. 1990)). "[I]nvestment losses are not proof that [a fiduciary] violated his duty of care." *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006). The Seventh Circuit has invoked this principle to affirm the dismissal of claims that plan fiduciaries violated ERISA's duty of prudence "by providing investment options that were too numerous, too expensive, or underperforming." *Divane*, 953 F.3d at 991. *Divane* is on point and requires dismissal in this case.[2]

Courts in other jurisdictions also have rejected similar allegations of underperformance. For example, in *Davis v. Washington University*, the Eighth Circuit affirmed dismissal of a claim that plan fiduciaries "should have jettisoned" certain investment options "because they were poor performers and cost too much." 960 F.3d 478, 484 (8th Cir. 2020). The court explained that "fiduciaries are not required to pick 'the *best* performing fund.'" *Id.* at 486 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018)) (emphasis in original). Courts have further held that "the mere fact that [a] Fund did not do as well as other

---

[2] In *Brown-Davis v. Walgreen Co.*, No. 19-cv-05392 (Dkt. No. 46) (N.D. Ill. Mar. 16, 2020) (attached as Exhibit C to the Declaration of Craig C. Martin), the district court sustained claims that were based on the underperformance of the Focus Funds in which the plaintiffs invested. This aspect of the decision was premised in part on the court's disagreement with the district court's decision in *Divane v. Northwestern University*, No. 16-cv-8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018). Since the issuance of this decision in *Brown-Davis*, the Seventh Circuit affirmed the district court's decision in *Divane* and reaffirmed the conclusion with which the *Brown-Davis* court took issue. *Divane*, 953 F.3d at 988. As explained in Section III, below, the *Brown-Davis* court also dismissed claims based on the underperformance of funds in which the plaintiffs did not invest, an issue not raised in *Divane*.

options does not give rise to the inference that Defendants' decision to retain that investment offering was imprudent." *Patterson v. Morgan Stanley*, No. 16-cv-6568 (RJS), 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019); *see also, e.g., id.* at *13 ("[C]onclusory allegations of cumulative underperformance are insufficient to state a claim, since backward-looking contentions regarding overall underperformance are improperly grounded in hindsight."); *White v. Chevron Corp.*, 752 F. App'x 454, 454 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2646 (2019) (holding allegations that defendants "could have chosen different vehicles for investment that performed better during the relevant period" did not make "it more plausible than not that any breach of fiduciary duty had occurred"); *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctr. S Ret. Plan v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 716 (2d Cir. 2013) ("[W]e judge a fiduciary's actions based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight.") (quotations omitted).

The crux of Count I is that over a period of six years, 2014-2019, the 10 Focus Funds plaintiff challenges allegedly underperformed, relative to other "comparator" funds. *See* Compl. ¶¶ 45-104. However, for all of the reasons cited in the case law above, that is insufficient to plead Northern Trust's breach of fiduciary duty. As a matter of law, the mere allegation that the challenged funds were "poor performers" does not "raise relief above the speculative level," as is required to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

B. <u>Plaintiff's Excessive Fee Allegations Are Insufficient</u>

In Count II, plaintiff asserts that Northern Trust breached its fiduciary duties by selecting funds that charge excessive fees, which "in turn, benefited Northern Trust." Compl. ¶¶ 137-41. However, the amended complaint's hodgepodge of contradictory allegations in support of this claim are so garbled that they not only fail to satisfy the Seventh Circuit's *Divane* standard, but also fall short of even the basic Rule 8 pleading standard under *Twombly* and *Iqbal*.

7

The Seventh Circuit has repeatedly held "that plans may generally offer a wide range of investment options and fees without breaching any fiduciary duty." *Divane*, 953 F.3d at 992 (citing *Loomis*, 658 F.3d at 673-74; *Hecker*, 556 F.3d at 586). To state a claim for breach of the duty of prudence based on allegedly excessive fees, plaintiff must allege that Northern Trust failed to follow a prudent process, resulting in excessive fees. *See Brock v. Robbins*, 830 F.2d 640, 647-48 (7th Cir. 1987) (distinguishing between the prudence of a fiduciary's process in agreeing to a fee and the reasonableness of the fee itself). Mere allegations that other investment options may have charged lower fees are not enough, as "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Hecker*, 445 F.3d at 586. Here, plaintiff has not even clearly identified the fees she takes issue with, or any coherent basis for her assertion that they are "excessive," much less connected those fees to Northern Trust's fiduciary process, as *Divane* requires.

First, plaintiff inexplicably conflates administrative (or recordkeeping) and investment management fees. Administrative (or recordkeeping) fees pay for a retirement plan's "basic and necessary administrative services, such as plan recordkeeping, accounting, legal and trustee services." U.S. Dep't of Labor, *A Look at 401(k) Plan Fees* at 3 (Sept. 2019), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf. Investment management fees are separate fees that pay for the management of a retirement plan's investments. *Id.* Plaintiff, however, appears to treat these types of fees as one and the same. She asserts that the "*management fees* charged by the [Focus] Funds" are "based on the total assets under management" and that "[i]n 2019, Northern Trust received $2 million in these fees." Compl. ¶ 4 (emphasis added). Then, she alleges that "Northern Trust was paid approximately $2,000,000 in *recordkeeping fees*." *Id.* ¶

8

106 (emphasis added). It is entirely unclear whether this same $2 million she describes elsewhere as "recordkeeping fees."[3] And although plaintiff asserts that Northern Trust "was paid . . . recordkeeping fees," Compl. ¶ 106, plaintiff nowhere alleges that Northern Trust is the Plan's recordkeeper, nor does the Plan Sourcebook or Form 5500 provide any such indication, *see* Plan Sourcebook, Form 5500.

Second, confusing things further, plaintiff is just as inconsistent about the amount of fees Northern Trust allegedly received, and when. She segues from alleging Northern Trust received "$2 million in these fees . . . *[i]n 2019*," Compl. ¶ 4 (emphasis added), to alleging that it "made almost $2 million" in fees "*during the class period*"— November 2, 2014 to December 31, 2019, *id.* ¶ 41 (emphasis added). She also alternates between asserting *Northern Trust* was *paid* $2 million in recordkeeping fees and asserting that "*non-proprietary funds . . . charge* excessive fees that pay for the Plan's recordkeeping services." Compl. ¶ 105 (emphasis added). She then asserts, without explanation, that "[t]hese fees, in turn, benefited Northern Trust." *Id.* None of these allegations are supported with any factual basis.

Plaintiff's convoluted fee allegations cannot be untangled into a coherent theory of breach. They therefore cannot form the basis of a claim. Where "some of the plaintiff's factual allegations are unrealistic or nonsensical and others not, some contradict others, and some are 'speculative' in the sense of implausible and ungrounded," a court should "consider all these features en route to deciding whether the complaint has enough substance to warrant putting the defendant to the expense of discovery." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). In *Atkins*, the Seventh Circuit affirmed dismissal of a suit where the court was "left in darkness" regarding the plaintiff's allegations. *Id*; *see also Mantei v. Stocking*, 18-cv-91, 2018

---

[3] Referring to the 2019 Form 5500 filing plaintiff cites ("Form 5500," attached as Exhibit B to the Declaration of Craig C. Martin) is not illuminating, as it does not reflect any $2 million fees to Northern Trust in 2019.

9

WL 1895545, at *1 (W.D. Tex. Apr. 9, 2018) (dismissing claims "because Plaintiff's Complaint states irrational and nonsensical allegations and fails to include sufficient supporting factual allegations to state a non-frivolous claim"). Here, as in *Atkins*, plaintiff's illogical allegations regarding fees leave both Northern Trust and the Court "in darkness" about what, exactly, her claim is. What is clear, however, is that plaintiff does not come close to alleging that the Plan paid excessive fees as a result of some failure of Northern Trust's fiduciary process, as *Divane* requires.

Plaintiff's allegations also run afoul of the requirement under Rule 8 of the Federal Rules of Civil Procedure that plaintiff submit "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit explained in *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." 328 F.3d 374, 378 (7th Cir. 2003) ("[A]lthough fat in a complaint can be ignored, dismissal of a complaint on the grounds that it is unintelligible is unexceptionable.") (quotations and citations omitted); *see also In re Westinghouse Sec. Litig.*, 90 F.3d 969, 703 (3d Cir. 1996) (affirming dismissal of "unnecessarily complicated and verbose" amended complaint under Rule 8); *Paspalis v. Dinerstein*, No. 86-cv-7305, 1987 WL 10295, at *1 (N.D. Ill. Apr. 24, 1987) (dismissing complaint consisting of "garbled allegations" that "fail[ed] to allege a short and <u>plain</u> statement of claims" and to which "defendant cannot reasonably be required to respond . . . in an intelligent manner") (emphasis in original). Plaintiff's recordkeeping allegations are not intelligible, much less straightforward. Count II should be dismissed accordingly.

    C.    <u>Northern Trust's Selection Of Its Own Funds Does Not Support Plaintiff's Fiduciary Duty Claims</u>

Plaintiff cannot salvage either of her inadequately pled breach of fiduciary duty

10

claims merely by pleading that the Plan's investment options include funds managed by Northern Trust. Plan sponsors commonly offer their own products to plan participants, and as a matter of law "a plan fiduciary does not breach its duty of loyalty simply by offering the plan sponsor's financial products." *Patterson*, 2019 WL 4934834, at *12. "[R]ather, a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." *Id.* (quotations omitted, emphasis in original). Notably, "incidental" benefits do not suffice. *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-6685, 2019 WL 4466714, at *4 (S.D.N.Y. Sept. 18, 2019) (citation omitted).

Plaintiff makes no plausible factual allegations from which the Court could infer that Northern Trust selected its own funds for the Plan "*for the purpose* of providing benefits to itself or someone else." *Patterson*, 2019 WL 4934834, at *12 (quotations omitted, emphasis in original). Instead, plaintiff merely alleges that "[a]pproximately two-thirds of the options Northern Trust offers in the Plan are its own proprietary funds," Compl. ¶ 108, and makes conclusory allegations of underperformance and excessive fees that are insufficient to form the basis of a claim for relief.

Moreover, plaintiff does not even attempt to plead in any of the Counts that the process Northern Trust used to select its own funds constituted a breach of fiduciary duty. Count I focuses on the alleged underperformance of the Focus Funds, while Count II focuses solely on the selection and maintenance of certain "non-proprietary funds."

## II. COUNT IV SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF FOR FAILURE TO MONITOR.

In Count IV, plaintiff asserts that Northern Trust breached the duty to monitor other Plan fiduciaries. Compl. ¶¶ 149-55. As a threshold matter, this claim is derivative of plaintiff's claims for breach of fiduciary duty. Because plaintiff has failed to state a claim for

breach of fiduciary duty, her duty to monitor claim necessarily fails. *Howell v. Motorola, Inc.*, 633 F.3d 552, 563 (7th Cir. 2011).

In any event, plaintiff's allegations do not satisfy the standard for pleading a claim for failure to monitor. To state such a claim, plaintiff must allege non-conclusory facts demonstrating that Northern Trust failed in its monitoring *process*. *Neil v. Zell*, 677 F. Supp. 2d 1010, 1024 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010) (allegations "only in the most general terms that the [alleged monitoring fiduciaries] breached their duty to monitor" "fail[] *Twombly*'s plausibility requirement"). Plaintiff provides no factual allegations whatsoever regarding Northern Trust's monitoring process. Instead, in support of Count IV, she makes generalized, conclusory statements, such as that each fiduciary "breached its fiduciary monitoring duty by . . . failing to monitor their appointees' fiduciary process." Compl. ¶ 153. Accordingly, Count IV should be dismissed for failure to state a claim for relief under Rule 12(b)(6).

### III. COUNT V SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

In Count V, plaintiff asserts that Northern Trust engaged in prohibited transactions by causing the Plan to invest in the Focus Funds, "which incurred management fees that benefited Northern Trust." *Id.* ¶¶ 156-59. Count V fails to state a claim.

ERISA § 406(a) prohibits a fiduciary from causing a retirement plan to "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." ERISA § 406(b) similarly prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." But the mere fact that Northern Trust selected its own funds, which received management fees, does not give rise to liability under Section 406. The purpose of that section "is to prohibit transactions that might involve self-dealing by a fiduciary, not to prevent fiduciaries from being paid for their work." *Danza v. Fid. Mgmt. Trust Co.*, 533 F. App'x 120, 126 (3d Cir. 2013).

12

Moreover, although plaintiff alleges that Northern Trust received the Focus Funds' management fees, she does not allege a key element of a prohibited transaction claim—that such fees were "*assets of the plan*." ERISA § 406 (emphasis added). Nor can she. Management fees "do not qualify as 'assets of the plan,' as required to make out a claim under" Section 406, because such fees "do not go to, and are not intended to go to, the Plan itself." *Fleming v. Fid. Mgmt. Tr. Co.*, No. 16-cv-10918-ADB, 2017 WL 4225624, at *9 (D. Mass. Sept. 22, 2017); *Cf. also Divane*, 953 F.3d at 992 (holding payment of recordkeeping fees did not constitute a transfer of plan assets) (citing *Hecker*, 556 F.3d at 584); *Hecker*, 556 F.3d at 584 (holding that once fees are collected from a fund's assets and transferred to service provider, they cease to be plan assets). Because plaintiff does not and cannot allege that Northern Trust used "assets of the plan" for the benefit of itself or a party in interest, Count V must be dismissed.

### IV. PLAINTIFF LACKS STANDING TO PURSUE CLAIMS AS TO INVESTMENT FUNDS IN WHICH SHE DID NOT PERSONALLY INVEST.

Plaintiff's claims should be dismissed for lack of standing to the extent that they relate to funds in which she did not invest. To establish injury in fact, the "first and foremost" element of constitutional standing, a plaintiff must show that she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) (citation and quotation marks omitted). This is inherently an individualized inquiry to determine whether the plaintiff has a "personal stake in the outcome." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). ERISA's statutory authorization to sue "does not affect the Article III standing analysis," and an ERISA plaintiff therefore must "plausibly and clearly allege a concrete injury." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020) ("This Court has rejected the argument that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a

13

person a statutory right and purports to authorize the person to sue to vindicate that right.'") (quoting *Spokeo*, 136 S. Ct. at 1549).

Here, plaintiff challenges 21 funds (Compl. ¶ 31), yet she invested in only one of them—the Northern Trust Focus 2030 Fund (*id.* ¶ 11). In this context, where plaintiff is challenging a plan that is participant-directed, "if a participant does not choose to invest in a particular offering, any change in the value of that financial product has no impact on the participant's account." *Patterson*, 2019 WL 4934834, at *4. Therefore, plaintiff "ha[s] not been injured as to those funds" in which she did not invest, and she lacks standing to bring claims challenging them. *Id.* ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant."); *see also*, *e.g.*, *Krauter v. Siemens Corp.*, 725 F. App'x 102, 109 (3d Cir. 2018) (finding ERISA plan participant who did not allege financial loss lacked standing); *Brown-Davis*, at *3 (dismissing claims challenging Focus Funds to the extent that they related to funds in which the plaintiffs did not invest); *Wilcox v. Georgetown Univ.*, No. 18-422 (RMC), 2019 WL 132281, at *9-10 (D.D.C. Jan. 8, 2019) (holding that plaintiffs lacked standing to allege ERISA violations as to investment options in which they did not invest); *Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 3:16-CV-1251, 2017 WL 2909714, at *7 (D. Conn. July 6, 2017) (holding that plaintiff failed to "allege that she was a participant, beneficiary or fiduciary . . . of a general account stable value fund, and therefore d[id] not have standing to bring claims concerning these products") (quotations and citations omitted).

The fact that plaintiff purports to assert claims on behalf of a class "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified

14

members of the class to which they belong." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quotations omitted); *see also Wilcox*, 2019 WL 132281, at *9 ("In a class action, the named plaintiff must demonstrate that they have Constitutional standing, measured at the time the amended complaint was filed.") (quotations and citations omitted).

Accordingly, the allegations and claims relating to the nine funds in which plaintiff admittedly did not invest should be dismissed.

## CONCLUSION

For all of the foregoing reasons, plaintiff's amended complaint should be dismissed in its entirety.

Dated: February 12, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

*s/ Craig C. Martin*
Craig C. Martin
Amanda S. Amert
Laura L. Norris
300 North LaSalle
Chicago, Illinois 60654-3406
(312) 728-9000
Email: cmartin@willkie.com
            aamert@willkie.com
            lnorris@willkie.com

John L. Brennan
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
Email: jbrennan@willkie.com

*Attorneys for Defendants The Northern Trust Company and The Northern Trust Company Employee Benefit Administrative Committee*

## CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Federal Rules of Civil Procedure and Rule 5.5 of the Local Rules of the Northern District of Illinois, the undersigned, an attorney of record in this case, hereby certifies that on February 12, 2021, a true and correct copy of **Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The Amended Complaint** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: February 12, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

s/ Craig C. Martin
Craig C. Martin
Amanda S. Amert
Laura L. Norris
300 North LaSalle
Chicago, Illinois 60654-3406
(312) 728-9000
Email: cmartin@willkie.com
aamert@willkie.com
lnorris@willkie.com

John L. Brennan
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
Email: jbrennan@willkie.com

*Attorneys for Defendants The Northern Trust Company and The Northern Trust Company Employee Benefit Administrative Committee*